457 F.2d 168
 In the Matter of THOMAS J. GROSSO INVESTMENT, INC., an
Arizona Corporation, Debtor Corporation in Reorganization.
James E. HAMBLEN, Trustee in Reorganization, Appellant,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Receiver of
Gibraltar Savings and Loan Association, Appellee.
 No. 71-1163.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 2, 1972.
Rehearing Denied Feb. 17, 1972.
 
 G. David Gage (argued), of Divelbiss & Gage; Penterman, Hamburger & Stoneman, Phoenix, Ariz., for appellant.
 Ronald H. Moore (argued), of Jennings, Strouss & Salmon, Jones, Brinig & Cooley; Robert C. Bates, of Snell & Wilmer; Ralph G. Smith, Jr., Esq., Perry & Smith, Phoenix, Ariz., for appellee.
 Before MERRILL and KILKENNY, Circuit Judges, and LYDICK, District Judge*
 MERRILL, Circuit Judge:
 
 
 1
 This appeal arises out of a corporate reorganization pursuant to chapter X of the Bankruptcy Act, 11 U.S.C. Secs. 501 et seq.
 
 
 2
 Petition for reorganization was filed by the debtor, an Arizona corporation. One of the business activities of the debtor was the purchase and sale of real estate, and at the time of filing of its petition it owned hundreds of parcels of real property in the State of Arizona, all of which were encumbered, and many of which were involved in mortgage foreclosure proceedings. Over forty parcels, at the time of petition, had suffered decree of foreclosure and had been sold at foreclosure sale. Arizona has by statute provided that for a six-month period following foreclosure sale the mortgage debtor may redeem the property from the purchaser.
 
 
 3
 The question here presented is the power of the Bankruptcy Court to stay the running of the redemption period.
 
 
 4
 At the time petition was filed, the District Court, in approving the petition, entered a restraining order under Sec. 116(4) of the Bankruptcy Act, 11 U.S.C. Sec. 516(4).[1] On the application of certain mortgagees, who had purchased the mortgaged premises at foreclosure sale, the District Court, over the objections of the trustee, and despite the contrary recommendation of the Referee, excluded the parcels in question from operation of the restraining order. That order of exclusion is the subject of this appeal.
 
 
 5
 The first question presented is whether the stays provided by Sec. 116(4) and Sec. 148[2] of the Bankruptcy Act, 11 U.S.C. Secs. 516(4), 548, apply to the statutory right of redemption. The District Court agreed with the Referee that they did.
 
 
 6
 The Referee in his recommendations discusses in some detail the state laws affecting mortgage foreclosures. He states:
 
 
 7
 "The Arizona statutes provide an interlocking and continuous procedure for the foreclosure of a mortgage-from the initial filing of the foreclosure suit, right on through to the ultimate execution of a sheriff's deed to the property after sheriff's sale and the expiration of the time to redeem. A.R.S. Secs. 33-721, et seq. (suit to foreclose); A.R.S. Secs. 12-1621, et seq. (sheriff's foreclosure sale); A.R.S. Secs. 12-1281, et seq. (foreclosure redemption rights)."
 
 
 8
 The statutes provide for the filing of suit, entry of judgment of foreclosure (which shall direct the sheriff to seize and sell the property as under execution in satisfaction of the judgment), and the making of the sale. The judgment debtor is then allowed six months within which to redeem. During this period legal title remains in the debtor. Upon expiration of the period a sheriff's deed is given to the purchaser. During the redemption period the state court retains jurisdiction to set aside a sale for inadequacy of the bid price. With reference to the state of title throughout these proceedings, it is stated in First National Bank of Yuma v. Maxey, 34 Ariz. 438, 272 P. 641, 642 (1928):
 
 
 9
 "Under the law of foreclosure up to the time of the sale of the property, the mortgagor, holds both the legal and equitable titles. When the sale is made, the equitable title passes to the purchaser, subject to defeasance by redemption within the statutory period. * * * If there is no redemption, the sheriff's deed completes the legal title of the purchaser. * * * If a redemptioner appear, the purchaser loses all title, legal and equitable, in the property, which passes to the former."
 
 
 10
 To the same effect is Jordan v. Phoenix Finance Co., 8 Ariz.App. 106, 443 P.2d 921 (1968).
 
 
 11
 There can be no question that the title retained by the debtor throughout the period of redemption constitutes property in the hands of the trustee as to which the chapter X court, under Sec. 111,[3] has exclusive jurisdiction. In two cases arising under chapter X's predecessor, Sec. 77B (one of them from this circuit), this jurisdiction was held sufficient, implemented by Sec. 2(a) 15,[4] to authorize an injunction to protect the legal title in the debtor following execution sale. Provident Mut. Life Ins. Co. v. University Ev. L. Church, 90 F.2d 992 (9th Cir. 1937); In re Argyle-Lake Shore Bldg. Corp., 78 F.2d 491 (7th Cir. 1935). This alone would seem to support the original District Court injunction.
 
 
 12
 The question directly presented, however, is the applicability of Sec. 116 and Sec. 148.
 
 
 13
 Section 116(4) provides that upon approval of a petition, the court may "enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor." Sec. 148 reads:
 
 
 14
 "Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act or other proceeding to enforce a lien against the debtor's property."
 
 
 15
 Appellee persuasively argues that under a literal reading of these provisions stay is not authorized after execution sale. It is asserted that with foreclosure a final decree has been entered; that with execution sale, even the judgment lien ceases to exist. It is argued that, at that point, the judgment is satisfied and the debtor-creditor relationship has ceased to exist. A new relationship has sprung into being by virtue of state law between the debtor and the purchaser, and the debtor is left with a right to acquire from the purchaser that which the latter had purchased.
 
 
 16
 This may, indeed, be an arguable analysis of the proceedings. However, it can hardly be claimed that all the debtor has is the opportunity to acquire a new asset. The legal title he possesses is the undivested remnant of his mortgagor's interest.[5] The trustee seeks to preserve an old asset rather than acquire a new one. Further, the argument of appellee reads Secs. 116 and 148 too narrowly and without regard for the purposes of chapter X.[6] The intent of the stay sections clearly is to protect the property of the debtor against threat of loss through execution. If adequate protection is to be afforded it must remain available so long as the property remains to be protected-until title finally passes from the debtor to the purchaser.[7]
 
 
 17
 The question, it would seem, is not one as to the strict nature of the rights of the parties under state law; rather it is one of construction of federal law: What sort of proceedings are these sections talking about? In our judgment the purpose of chapter X requires that "proceedings to enforce a lien" and "mortgage foreclosure" as used in these sections be construed to encompass all proceedings leading to the divestiture of the debtor's title.[8]
 
 
 18
 Accordingly we agree with the Referee and the District Court that these sections apply during the period of redemption provided by state law.
 
 
 19
 The District Court held, nevertheless, that the period of stay must be limited to 60 days pursuant to Sec. 11(e) of the Act, the second sentence of which provides in part:
 
 
 20
 "* * * where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the * * * trustee * * * may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by * * * applicable Federal or State law, as the case may be."
 
 
 21
 This bankruptcy provision, if it is to be incorporated into chapter X, is made to apply through Sec. 102 of the Act:
 
 
 22
 "The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter [X] apply in proceedings under this chapter * * *."
 
 
 23
 Thus the question is presented whether the second sentence of Sec. 11(e) is inconsistent or in conflict with provisions of chapter X.[9] We agree with the Referee that it is, insofar as it would operate to limit the stays provided for by Secs. 116 and 148.
 
 
 24
 In straight bankruptcy, where the ultimate purpose is liquidation of the estate, Sec. 11 provides a beneficial grace period-a grant of extra time within which to take action.[10] In chapter X, where the purpose is rehabilitation of a going business, a period of grace is not needed. The Act itself provides all the time required. The second sentence of Sec. 11(e), then, when applied to chapter X, converts itself into a drastic limitation upon the power of the court to protect the property of the debtor in the manner contemplated by and for the purposes of the Act.[11]
 
 
 25
 Accordingly we hold that the stays provided by Secs. 116 and 148 are not limited by Sec. 11(e).
 
 
 26
 Reversed and remanded for further proceedings.
 
 
 
 *
 Honorable Lawrence T. Lydick, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Quoted text, infra
 
 
 [2]
 Quoted text, infra
 
 
 [3]
 Section 111 of chapter X reads:
 "Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located.
 Former Sec. 77B(a) contained a sentence of similar import.
 
 
 [4]
 Section 2(a) (15) empowers the court to:
 "Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: Provided, however, That an injunction to restrain a court may be issued by the judge only."
 
 
 [5]
 Provident Mut. Life Ins. Co. v. University Ev. L. Church, 90 F.2d 992 (9th Cir. 1937); In re Argyle-Lake Shore Bldg. Corp., 78 F.2d 491 (7th Cir. 1935)
 
 
 [6]
 "The terms of 116(4) and 148 are necessarily broad. The provisions are among many designed to maintain the status quo of the debtor corporation in order to afford a reasonable opportunity for the debtor's financial rehabilitation * * The enforcement sought to be enjoined may be in the nature of a judicial proceeding or some non-judicial act or proceeding, for the words 'any act or proceeding' are all inclusive." 6 Collier on Bankruptcy, 652-55
 
 
 [7]
 Provident Mut. Life Ins. Co. supra, note 5; In re Argyle-Lake Shore Bldg. Corp., supra, note 5. See Continental Illinois National Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pacific R. R., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1934)
 
 
 [8]
 The draftsmen of the stay provisions
 voiced concern that they be construed with an appropriate generosity, and with an eye to facilitation of the goal of debtor rehabilitation. See In Re Maier Brewing Co., D.C., 38 F.Supp. 806 at 814, for a detailed discussion of the legislative history.
 
 
 [9]
 The inconsistency need not arise from the specific clash of textual language, but may result instead from a broader disharmony between the purposes of chapter X and the particular provisions in question. See generally, 6 Collier on Bankruptcy, 194-231
 
 
 [10]
 See statement of David Teitelbaum in the House Hearings on H.R. 6439, 75th Cong., 1st Sess. (1937), 33-35
 
 
 [11]
 Dabney v. Levy, 191 F.2d 201 (2d Cir. 1951), and Austrian v. Williams, 198 F.2d 697 (2d Cir. 1952), do not persuade us that the second sentence of 11(e) should apply in chapter X. It is reasonable enough that the chapter X trustee should bring his suit to recover preferences etc. within two years of the time of petition, as the first sentence of 11(e) requires. In so holding, however, Austrian and Dabney are no authority for the proposition that the trustee has only 60 days to exercise all right of redemption which he may have in encumbered collateral. The filing of suit within two years poses no threat to reorganization. However, the collection of sufficient cash to pay off the secured debt and redeem the property at issue within the period of 60 days may well be impossible
 Chapter X authorizes the adjustment of "secured debt." As in the Provident case, supra, note 5, secured debt may be paid off (even after sheriff's sale) pursuant to a long term reorganization plan, with the ultimate view of reclaiming full right in the collateral. While this would be impossible in straight bankruptcy, where the powers of the court are geared to liquidation, it is indispensable in reorganization. In reorganization, the debtor's encumbered assets are frequently employed in the effort to rehabilitate the business. If redemptive right in such assets must be exercised immediately, and cash summoned up on the spot-in cases where cash flow problems often precipitate the chapter X petition-it is apparent that much of the needed collateral will slip through the trustee's fingers, with consequent loss of equity for the estate, interruption of reorganization, and windfall gain for the mortgagees.
 For purposes of comparison, see Davis v. Security National Bank of Nevada, 447 F.2d 1094 (9th Cir. 1971), where the court discussed Sec. 11(e) in the light of Sec. 261 of chapter X, looking to the purposes of that section and of the entire chapter.