**In re CAPITAL MORTGAGE & LOAN, INC., a California Corporation, Debtor.**

**Bankruptcy No. 281–03865–D–11.**

United States Bankruptcy Court, E.D. California.

Dec. 28, 1983.

Greg Eichler, Sacramento, Cal., for trustee.

Melvyn J. CoBen, Sacramento, applicant.

Howell Y. Jackson, Sacramento, Cal., for respondents, Manuel Val, Al DiMasi, Jr., H.

Dean Stiles and Dept. of Veterans Affairs, State of Cal.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

FACTS:

On December 19, 1979, the Department of Veterans Affairs of the State of California entered into a Vendor-Vendee land sales agreement with John E. and Linda S. Benefield. This agreement of sale was recorded in the Glenn County Recorder's Office on January 15, 1980. On January 25, 1980, the Department of Veterans Affairs issued a consent to encumber the property. The Benefields then executed a Note, secured by a Deed of Trust whereby the Debtor, Capitol Mortgage & Loan, is the named beneficiary. Said Deed of Trust was duly recorded on August 29, 1980. Debtor then filed a Chapter 11 on September 14, 1981 with Melvyn J. CoBen being appointed trustee. In December 1981, the Benefields became delinquent in their payments to the Department of Veteran Affairs and in lieu of foreclosure, the Benefields executed a Quitclaim deed to the Department of Veteran Affairs in May, 1982. The Department of Veterans Affairs filed a notice of cancellation on October 20, 1982, and at that time "directed" the sale of the subject property. The Department of Veterans Affairs and the Trustee corresponded throughout these events with the Department of Veterans Affairs saying it intended to dispose of the property as it deemed proper and the trustee alleging that the Department of Veterans Affairs' position was violative of the automatic stay provision of the United States Bankruptcy Code.

ISSUE:

Whether the Department of Veterans Affairs, the senior lienholder, violated the automatic stay provision, § 362(a)(3), of the United States Bankruptcy Code by cancelling the Cal Vet loan with the Benefields, the third party trustors, and taking a quitclaim deed from the third party in lieu of foreclosure when Capitol Mortgage & Loan,

the junior lienholder, is a debtor-in-possession?

RULE OF LAW:

§ 362(a)(3)

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, 303 of this title operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate;

ANALYSIS:

Before establishing if property of the debtor's estate was obtained by the Department of Veterans Affairs (hereinafter referred to as "the Department") in their filing a notice of cancellation, accepting a quitclaim deed and directing the sale of the property, it must first be determined what property interest is held by the Department, Capitol Mortgage (hereinafter referred to as "the debtor"), and the Benefields (also referred to as the third party). Once the property interests are determined, it must then be determined if the Department's actions attempted to obtain property of the debtor's estate or from the debtor's estate, thus violative of the automatic stay.

The first property interest to be analyzed is that held by the Department. The facts state that the Benefields entered into a land sale agreement with Cal Vet. Provision # 21 of the Cal Vet Loan Contract states that "upon payment in full of the unpaid balance hereunder, and upon performance by Purchaser of his covenants herein contained, Department shall execute and deliver to Purchaser a good and valid deed of conveyance of the property hereinafter described." According to California law, this contract is termed an executory real property sales contract, "which puts the buyer in possession of the property but obligates the seller to tender a deed only upon payment of the purchase price and is considered a common security device." *3 Witkin, Summary of California Law, Security Transaction in Real Property, § 21.* The fact that this type of real property transaction is considered a security device is significant due to the fact that the state retains legal title to the property while the purchaser acquires only equitable title and

right to possession. The Department could thus argue that since they maintained full legal title to the property, no other entity could obtain any interest in that real property. The Department, however, does not so contend; it admits holding only a first or senior security interest in the real property of the Benefields.

██ Case law substantiates this conclusion that the Department holds a mere security interest. As between the State and the veteran purchaser, the latter is the owner; the retention of the legal title by the state is not significantly different from the situation of a deed with lien retained or a mortgage back to secure purchase money. *Wilkinson v. Wilkinson,* 51 Cal.App.3d 382, 389–390, 124 Cal.Rptr. 870 (1975). The security title to land pledged as security for the payment of a debt is not considered to be property for tax purposes and hence a veteran in possession of land under an executory contract whereby title is retained by the state is for all purposes the owner and the vendor retains mere legal title. *Eisley v. Mohan,* 31 Cal.2d 637, 643–644, 192 P.2d 5 (1948). The title to the property will remain in the state *as security* until the purchase price has been paid in full. *Id.* at 642, 192 P.2d 5. The Department of Veterans Affairs holds the naked title only for purposes of security. *Cline v. Haines,* 192 Cal. App.2d 560, 563, 13 Cal.Rptr. 797 (1961).

Also cited is legislative history enabling one to determine what the intent was of the State of California in enacting the Veterans Farm & Home Purchase Act. The plan whereby veterans may purchase homes from the state rests upon Constitutional provisions approved at the general election in 1922. The argument presented to the voters in support of the proposed amendment, and the issuance of the bonds to carry out its purpose includes the following statement: "Title to the property will remain in the state as security until the purchase price has been paid in full." *Eisley,* 31 Cal.2d 637, at 644, 192 P.2d 5. The primary purpose of the Veteran's Farm & Home Purchase Act is to finance the purchase of farms and homes for veterans.

Under the terms of the statute and contract with Mr. Eisley, equitable title and right to possession passed to him when he entered into the conditional sale transaction. Therefore, in the facts before the Court, the Benefields acquired equitable title and right to possession while the Department retained legal title solely for security for payment of the purchase price.

■ The second property interest to be analyzed is that held by the debtor, Capitol Mortgage. The facts state that the Benefields executed a Note, secured by a deed of trust wherein the debtor is the named beneficiary. "Deed of Trust actually gives the trustee only such interest as is necessary to carry out the trust; that in practical effect it is little more than a mortgage with power to convey and that the trustee takes the legal title for security only, leaving a legal estate and the ordinary rights of ownership in the trustor." *3 Witkin, Summary of California Law, Security Transactions in Real Property, § 7.* However, the title theory has been disregarded in most situations and the deed of trust has been deemed to create a mere lien on the property. Upon the giving of a deed of trust, the trustor nevertheless retains the "legal estate" as against all persons except the trustee. *3 Witkin, supra* at 1495.

■ California law is specific as to the interest retained by the beneficiary in a note and deed of trust transaction. One document is a note, and the other is a security instrument. In California it is called a deed of trust. It may also be a mortgage. In either case, the creditors may be said to have a lien on the property. *R. Bernhardt, California Mortgage and Deed of Trust Practice,* § 1.4. Therefore it is determined that Capitol Mortgage & Loan had a lien on the subject real property.

■ Property subject to a mortgage or deed of trust remains fully alienable, and thus can be subject to further encumbering. It is possible to execute a deed of trust in property already subject to an existing deed of trust. The beneficiary of the instrument merely acquires a junior rather than a senior lien on the property. *R. Bernhardt, supra,* § 3.14. Therefore, the debtor's in-terest is termed a junior lienholder since the Department had a prior lien on the same property.

■ The next issue in need of discussion is whether the property interest that has *previously been termed a "junior lien" in the subject property, is part of the "debtor's estate."* The facts state that the debtor is named payee on a promissory note secured by a deed of trust, in which the debtor is the named beneficiary. Case law supports the premise that the debtor's lien on the real property is considered property of the debtor's estate. Promissory note in which bankruptcy debtors were payee was property of debtor's estate for purposes of bankruptcy. *In re BeVier,* 12 B.R. 75 (Bkrtcy.S.D.1981). Therefore, the note held by the debtor is definitely considered part of the debtor's estate. *Matter of Madden,* 18 B.R. 18 (Bkrtcy.N.J.1981) states that a bankruptcy estate is comprised of all legal and equitable interest in debtor's property as of the filing of the bankruptcy petition. Therefore, since a lien is considered a beneficial or equitable interest in property, and it was in existence prior to the debtor's filing bankruptcy, the lien interest is considered part of the debtor's estate.

■ The final issue to be considered is if the Department's action in accepting an in lieu deed and directing the sale of the real property constituted an act in violation of the automatic stay provision (§ 362) of the United States Bankruptcy Code. To decide this issue, the scope of the automatic stay must be considered and it must be determined if the Department's actions were acts to obtain possession of property of the estate or of property from the estate. In other words, it must be determined if the Department's acts in any way affected the debtor's lien interest in the property. With respect to the act of accepting a lieu deed, any conveyance by the trustor passes his title to the transferee subject to all existing liens. *Streiff v. Darlington,* 9 Cal.2d 42, 68 P.2d 728 (1937). If the grantee is the beneficiary under the first deed of trust, there is no merger of a beneficiary's lien and title when there are junior lienholders of record.

*Anglo-Californian Bank v. Field,* 146 C. 644, 80 P. 1080 (1905). The junior lienholder should be treated as a junior who has been omitted from a judicial foreclosure sale—his rights are unimpaired but the sale is otherwise valid. The junior would be allowed to redeem from the senior lien, and the senior should be allowed to bring a strict foreclosure against the junior. *R. Bernhardt, California Mortgage and Deed of Trust Practice,* § 6.36. Therefore, the Department in accepting the in lieu deed, did not attempt to obtain possession of property of the debtor's estate since the property they held was still subject to the lien held by the debtor.

 Rights of the debtor are also considered property of the debtor's estate. Therefore, if the Department's action in some way prevented the debtor from exercising a right, then it would be considered a violation of the automatic stay. It has been held that a debtor's right of redemption following foreclosure is property of the debtor's estate. *Matter of Madden,* 18 B.R. 18 (Bkrtcy.N.J.1981). In general, in a foreclosure action, all junior lien holders of record should be included. They have the right to redeem the senior lien by paying it off and to share in any surplus from the senior sale. C.C.P. § 701, C.C. §§ 2903–2904. However, it is well established that bankruptcy law provides that the filing of a bankruptcy petition operates as a stay of any act to enforce a lien against property in custody of the bankruptcy court. The automatic stay prohibits the initiation of any steps, such as recording a notice of default, that would lead to foreclosure of property of the debtor's estate.

 In the case of an in lieu deed, the situation is the same. The junior lienholder should be treated as a junior who has been omitted from a judicial foreclosure sale: his rights are unimpaired but the sale is otherwise valid. The junior should be allowed to redeem from the senior lien, and the senior should be allowed to bring a strict foreclosure action against the junior. *R. Bernhardt, California Mortgage and Deed of Trust Practice,* § 6.36. However, case law states that the automatic stay applied to the right of the debtor to redeem property after foreclosure, therefore tolling the period of redemption. *In re Thomas J. Grosso Investment, Inc.,* 457 F.2d 168 (9th Cir.1972). A recent case carried this idea further saying that the automatic stay was sufficiently broad to stay or toll the running of the statutory reinstatement period as to both the debtor and the junior trust deed holder. *In re Eagles,* 26 B.R. 41 (Bkrtcy.C.D.Cal.1982), 10 B.C.D. 421. In the *Eagles* case, the debtor and the junior trust deed holder were different parties. In the facts presented before the court now, the debtor is also the junior lienholder. This deviation in fact is not sufficient to warrant a different rule of law. The debtor's right of redemption or reinstatement is therefore tolled by the filing of the bankruptcy. Therefore, the debtor did not have to execute its right of redemption. The fact that the Department accepted the in lieu deed, filed a notice of cancellation and directed the sale of the property did not affect the debtor's right to redeem *after* the foreclosure sale, as the Department's actions were all *subject to* the debtor's right of redemption. Even though the debtor still has the right to redeem postforeclosure, the trustor, mortgagor, or other persons having an interest in the property have a statutory right under California law to reinstate the loan at any time before the judgment of foreclosure is entered, and have a right to redeem the property from the mortgage or deed of trust by paying the full amount due the foreclosing creditor at any time before the foreclosure sale. C.C. §§ 2903–2905. To reiterate, the filing of bankruptcy tolls the period within which a debtor must reinstate or redeem the loan. Therefore, the debtor, Capitol Mortgage, was under no obligation to do so. However, the Department's action in accepting the lieu deed, filing a notice of cancellation, and directing the sale of property were actions injurious to Capitol's right of reinstatement or redemption preforeclosure. Since these rights have been deemed to be property rights of the debtor and the right was extinguished, the automatic stay was violated.

Case law supports the premise that the automatic stay was violated. *In re Bialac,* 16 B.R. 982 (Bkrtcy.Ariz.1982) held that a

secured party's foreclosure sale of five-sixths of a surplus cash note, in which a certain debtor held the other one-sixth interest destroyed his preforeclosure right to redeem, and in so doing violated the automatic stay. The case establishes first the fact that the debtor had a preforeclosure right of redemption according to Arizona state law. *Bialac* further states that while there may be an implied right to proceed against property of the co-debtor, such an action cannot be used to destroy certain intangible property rights of a co-debtor in bankruptcy. To allow such would frustrate the underlying purpose of § 362 which is to freeze the property rights of the debtor and prevent the usurpation of such property interest by the creditors. *Bialac* reemphasized the fact that postforeclosure right to redeem is property of the estate but focused its attention on the preforeclosure right of redemption. The case also dealt with the situation where the person alleging the existence of the right holds a partial interest in the collateral in question, which partial interest was not being sold. The court held that the debtor's right to redeem the entire cash note is subject to the protection of the automatic stay provision, and that this right was affected by the sale of five-sixths of the note. In the situation before the court, the facts are slightly different in that the secured creditor attempted to direct a sale of the entire interest of the secured creditor and debtor. This factual variation however allows an even stronger argument to be made for a violation of the automatic stay. If the *Bialac* case says the automatic stay was violated with the sale of a portion of the collateral, that portion being the non-debtor's interest, then the automatic stay is certainly violated where the secured party is attempting to sell the entire fee interest, representing that interest held by both the secured party and the debtor. This is the situation before the Court as the secured party, the Department, is attempting to sell the entire parcel of real property in which the debtor is the junior lienholder. Therefore the action should definitely be considered to be in violation of the automatic stay.

The Department, of course, opposes the position that the stay was violated and cites *In re Le Peck Construction,* 14 B.R. 195 (1981) as supporting case law. In that case it was determined that the automatic stay provision of the Bankruptcy Code was not applicable to the bank's application for leave to join and serve the debtor-in-possession as a necessary and proper defendant in a foreclosure action which the bank was bringing against the owner of the building against which the debtor had filed a mechanics' lien since the bank was not seeking to obtain "possession of property of the estate". But the facts in the *Le Peck* case differ extensively from the facts now before the Court. In *Le Peck,* the junior lienholder held a mechanics' lien, not a fee interest in the property as does Capitol Mortgage, the debtor. In *Le Peck,* the junior lienholder's interest was effectuated postpetition rather than prepetition as was Capitol's. Also the *Le Peck* decision involves a senior lienholder seeking the permission of the Court to engage in judicial creditor remedies, while the facts now presented to the Court for determination involve a secured creditor, the Department, who is engaging in foreclosure activities without seeking judicial authority.

*In re Fidelity Mortgage Investors,* 550 F.2d 47 (2d Cir.1976) is a case directly on point. This case involves a real estate investment trust that had petitioned for reorganization under Chapter XI of the Bankruptcy Act. After the filing, general contractors for the construction of a condominium project on which the trust held a first deed of trust filed suit in state court to enforce their allegedly prior materialmen's liens against the trust. The trust is then considered to be a junior lienholder in relation to the contractors. The trust then moved the bankruptcy court for a ruling that the contractors be held in contempt for initiating the state court action without first securing permission from the bankruptcy court. The Court held the contractors in contempt for violation of a Bankruptcy Rule mandating that a Chapter XI Petition shall automatically stay other judicial proceedings against the debtor-in-pos-

session except by permission of the bankruptcy court. The Court thus held that the bankruptcy of a holder of a junior deed of trust stops foreclosure by a senior lienholder. No Code case has yet addressed this point but it should be recognized as the rule, especially due to the fact that the scope of the stay under the Bankruptcy Code was intended to be broad.

The broad sweep of the automatic stay was expounded in 2 *Collier on Bankruptcy*, ¶ 362.04 (15th Ed.) where it states:

> The stay of section 362 is extremely broad in scope and aside from the limited exceptions of subsection (b) should apply to almost any type of formal or informal action against the debtor or property of the estate. It should be observed that one of the benefits of the stay is creditor protection in a manner consistent with the promotion of the bankruptcy goal of equality of distribution. Subsection (a) simply provides for an automatic stay, applicable to all entities, of a wide variety of actions listed in subsections (a)(1) through (a)(8). While the language is from time to time duplicative little is omitted.

The broad spectrum of the stay is further clarified in the following legislative history which sets forth the purpose of Section 362(a):

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all *foreclosure actions* . . . The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. House Report No. 95–595 at p. 340, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6296.

CONCLUSION:

Based on the analysis previously presented, which included both a discussion of case law and legislative history, I therefore hold that the Department of Veterans Affairs' actions in accepting the in lieu deed and directing the sale of the real property affected Capitol Mortgage & Loan's right of redemption (preforeclosure), which is property of the debtor's estate. Therefore, the Department of Veterans Affairs is in violation of the Automatic Stay provision of the United States Bankruptcy Code, § 362(a), and the injunction sought by applicant, MELVYN F. COBEN, must be granted. The matter of sanctions for violation of the automatic stay will be reserved for future disposition. This Memorandum Opinion and Decision shall constitute Findings of Fact and Conclusions of Law. Counsel for the Debtor is requested to prepare and submit an Order consistent herewith.