**In The Matter Of Clarence E. ST. AMANT, Debtor.**

**Bankruptcy No. 2–83–00882.**

United States Bankruptcy Court, D. Connecticut.

June 7, 1984.

Martin W. Hoffman, Hartford, Conn., for movant, Henry Jazlowiecki.

Joseph Neiman, Kensington, Conn., for debtor.

## MEMORANDUM AND ORDER RE: MOTION FOR RELIEF FROM STAY

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### ISSUE

This proceeding raises the issue of which provision of the Bankruptcy Code applies to the running of a law day established by a Connecticut state-court judgment of strict foreclosure of a judgment lien when a chapter 13 petition is filed prior to the arrival of the law day. Since, under the framework of the Bankruptcy Code,[1] the only Code provisions relevant to this matter are contained in chapters 1 and 3 and apply to all estates, e.g., chapters 7, 11 and 13, the resolution of this question has significance beyond the boundaries of the present case.

### II.

### BACKGROUND

On May 27, 1982, Henry Jazlowiecki (movant) commenced a suit for breach of contract against Clarence E. St. Amant (debtor), a self-employed carpenter, in the superior court for Hartford/New Britain at New Britain, Connecticut. The debtor was defaulted for failure to appear and a judgment for $9,714.00 plus interest and costs was entered against him on August 4, 1982. On November 18, 1982, movant recorded the judgment on the Plymouth, Connecticut land records as a lien on debtor's realty, an unimproved building lot described as Lot #15, Barry Road (property). The judgment remaining unpaid, movant commenced an action to foreclose the lien. Debtor filed a pro se appearance and was defaulted for failure to plead. Finding that $10,484.88 was then due movant, the state court, on June 20, 1983, entered a judgment of strict foreclosure, setting a law day of October 3, 1983. On September 30, 1983, the debtor moved to set aside the original judgment of August 4, 1982, alleging that he had not been properly served with process and requesting an opening and a stay of the judgment of strict foreclosure. The court twice reopened the foreclosure judgment, setting new law dates to allow for time to consider the motion to set aside. The final law day set was November 29, 1983. On November 1, 1983, the court denied debtor's motion to set aside the judgment underlying the lien.

Without taking any further action either to satisfy or to reopen the judgment of foreclosure, debtor, on November 21, 1983, filed a chapter 13 petition as a person engaged in business. Movant, on December 20, 1983, filed a motion for relief from stay, pursuant to 11 U.S.C. § 362(d)[2] and Rules 4001 and 9014, Fed.R.Bankr.P., "to secure" the property from debtor. He claims that by operation of state law, debtor (or the bankruptcy estate) no longer owns the property. Debtor asserts the property remains part of the bankruptcy estate relying upon the automatic stay provisions of 11

---

**1.** Section 103 of Title 11 of the United States Code, captioned "Applicability of Chapters," provides in relevant part:

(a) Except as provided in section 1161 [railroad reorganization] of the title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title.

11 U.S.C.A. § 103 (West 1979).

**2.** Section 362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C.A. § 362(d) (West 1979).

U.S.C. § 362(a)[3] to have tolled the running of the law day on November 29, 1983.[4] The parties have stipulated that the sole issue for resolution at this time is whether or not the property remained as part of the chapter 13 estate after November 29, 1983.[5] The appropriate initial step is to examine the legal concepts underlying the Connecticut foreclosure procedures.

## III.

## CONNECTICUT LAW

In Connecticut,

[a] judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate ....

From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described....

A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property.

1983 Conn.Acts 581 § 14(a), (b), (c) (Regular Session) (incorporating former §§ 49–44 and 49–46 of the Connecticut General Statutes). Although the court has discretion to order foreclosure by sale, Conn.Gen.Stat. § 49–24, strict foreclosure is commonly used. A description of the salient features of Connecticut strict foreclosure procedure is as follows:

> On an application for a foreclosure the court will ascertain the sum that is due on the mortgage, and enquire into the value of the mortgaged premises, and will limit a time for redemption having regard for the value of the [mortgaged] premises when compared with the debt. If the land is worth about the amount of the debt or less, they [sic] will give but a short time; if the value of the land considerably exceeds the debt, so that it is an object to redeem, they [sic] will give a proportional time according to the circumstances of the case to prevent a sacrifice of the property; but no precise period has been established.

*Brand v. Woolson*, 120 Conn. 211, 214–15, 180 A. 293, 295 (1935). It is upon the expiration of the redemption period that a lienor acquires absolute title and the right

**3.** Section 362(a) of the Bankruptcy Code provides:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title; or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78 eee(a)(3)), operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the

extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.
11 U.S.C.A. § 362(a) (West 1979).

**4.** The debtor also seeks support from the holding of the District Court in *Valente v. Savings Bank of Rockville*, 34 B.R. 362 (D.Conn.1983), but that decision is completely inapposite as it deals only with the power of the bankruptcy court to deaccelerate a mortgage note prior to the foreclosure sale of mortgaged premises.

**5.** Although movant served the chapter 13 trustee with the present motion and the notice of hearing, the trustee has not participated in this proceeding.

to possession. *City Lumber Co. of Bridgeport, Inc. v. Murphy*, 120 Conn. 16, 179 A. 339 (1935) (mechanic's lien). "Appropriation does not occur upon the entry of the judgment of strict foreclosure but upon the extinguishment of subsequent rights by the expiration of the law days without redemption." *Id.*, 120 Conn. at 26, 197 A. at 343.[6]

## IV.

## APPLICATION OF BANKRUPTCY LAW

The courts, to date, are divided on the question of whether the provisions of § 362(a) toll the expiration of a postpetition redemption period. The apparent majority view is that § 362(a) does not affect the expiration of a postpetition redemption period. These courts reason that a creditor's affirmative act is required for § 362(a) to apply, and the mere passage of time working in the creditor's favor will not suffice to activate § 362(a). They find the appropriate provision to be 11 U.S.C. § 108(b)[7]

with its 60-day postpetition period for the curing of defaults. They conclude that to apply § 362(a) to a redemption period would thereby render § 108(b) surplusage. *See, e.g., Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Westergaard v. Cucumber Creek Development, Inc. (In re Cucumber Creek Development, Inc.)*, 33 B.R. 820, 11 B.C.D. 105 (D.Col.1983); *First Fin. Sav. and Loan Ass'n v. Winkler*, 29 B.R. 771 (N.D.Ill.1983).[8] The contrary holdings conclude that the language of § 362(a) is broad enough to stay the running of a postpetition period of redemption and that § 108(b) can be read consistently with § 362(a) thus construed. *See, e.g., First Savings and Loan Association of Saginaw, Michigan v. Bennett (In re Bennett)*, 29 B.R. 380 (W.D.Mich.1981); *In re Shea Realty*, 21 B.R. 790 (Bankr.D.Vt. 1982); *Moratzka v. Lanesboro State Bank (In re Johnson)*, 8 B.R. 371, 7 B.C.D. 222, 3 C.B.C.2d 569 (Bankr.D.Minn.1981).[9] After

---

**6.** Section 49–47 of the Connecticut General Statutes provides, "Certificates of foreclosure of judgment liens shall be, as far as possible, of the same form as is prescribed for certificates of foreclosure of mortgages." Conn.Gen.Stat.Ann. § 49–47 (West 1984 Supp.). Section 49–16 provides that a certificate of foreclosure of a mortgage must be placed on the appropriate land records and "[i]f such person neglects to lodge the certificate for one month after the title becomes absolute, he shall be fined not more than five dollars," Conn.Gen.Stat.Ann. § 49–16 (West 1984 Supp.). Section 49–16 is concerned only with notice of ownership and has no implications for the vesting of ownership in the foreclosing lienor.

**7.** Section 108(b) of the Bankruptcy Code provides:

[I]f applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
 (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
 (2) 60 days after the order for relief.
11 U.S.C.A. § 108(b) (West 1979).

**8.** *See also Martinson v. First National Bank of Oakes (In re Martinson)*, 26 B.R. 648 (D.N.D. 1983), *rev'd on other g'nds*, 731 F.2d 543, 3 Bankr.L.Rep. (CCH) ¶ 69,791 (8th Cir.1984); *Bank of Commonwealth v. Bevan*, 13 B.R. 989, 7 B.C.D. 557 (E.D.Mich.1981); *Steele v. Pridham (In re Pridham)*, 31 B.R. 497 (Bankr.E.D.Cal. 1983); *Cramer v. Markee (Matter of Markee)*, 31 B.R. 429, 8 C.B.C.2d 1331 (Bankr.D.Idaho 1983); *In re Owens*, 27 B.R. 946, 10 B.C.D. 444 (Bankr. E.D.Mich.1983); *In re Murphy*, 22 B.R. 663, 9 B.C.D. 718, 7 C.B.C.2d 74 (Bankr.D.Col.1982); *Sun Bank/Suncoast v. Construction Leasing and Investment Corp. (In re Construction Leasing and Investment Corp.)*, 20 B.R. 546 (Bankr.M.D. Fla.1982); *Ecklund & Swedlund Development Corp. v. Hennepin Federal Savings & Loan Assoc. of Minneapolis (In re Ecklund & Swedlund Development Corp.)*, 17 B.R. 451 (Bankr.D.Minn. 1981); *Columbine P & S Fund, Inc. v. Hellenschmidt (In re Hellenschmidt)*, 5 B.R. 758, 6 B.C.D. 1051 (Bankr.D.Col.1980).

**9.** *See also In re Capital Mtg. & Loan, Inc.*, 35 B.R. 967 (Bankr.E.D.Cal.1983); *California Thrift and Loan Assoc. v. Downey Savings and Loan Assoc. (In re Eagles)*, 26 B.R. 41, 10 B.C.D. 421 (Bankr.C.D.Cal.1982), *rev'd on other g'nds*, 36 B.R. 97 (Bankr.App.1984); *In re H & W Enterprises, Inc.*, 19 B.R. 582 (Bankr.N.D.Iowa 1982); *Sapphire Investments v. Stewart Title and Trust of Tucson (In re Sapphire Investments)*, 19 B.R. 492, 9 B.C.D. 217, 6 C.B.C.2d 639 (Bankr.D.

reviewing the policy considerations, the relevant Code sections and their legislative histories and the cases cited above, I have determined that § 362(a) and not § 108(b) most appropriately applies to a postpetition period of redemption when a judgment lien is being foreclosed under Connecticut foreclosure law.

## A.

## POLICY CONSIDERATIONS

Taking into account the purposes of bankruptcy law, i.e., the equal distribution of assets to creditors and the avoidance of windfalls to any creditor in liquidation cases and the rehabilitation of debtors engaged in business, § 108(b)'s 60-day extension of a redemption period is totally inadequate to accomplish such purposes. A chapter 7 trustee in a liquidation case cannot, within that period, reasonably be expected to make adequate arrangements for saving any equity in property being foreclosed. In chapters 11 and 13, such a grace period is completely worthless for the purposes of these debtor rehabilitation chapters.[10] *See In re Thomas J. Grosso Investment, Inc.*, 457 F.2d 168 (9th Cir. 1972) (chapter X case). State-law redemption requires a lump-sum payment of the entire debt. A chapter 11 or 13 plan can provide for payment of the lienholder's interest in the property over a term, despite lienholder dissent.[11] Confirmation of a

chapter 11 or 13 plan is virtually impossible within a 60-day period. Remedying this situation by requiring the debtor to seek and depend upon state-court extensions of such redemption periods, even where available, would be contrary to the rationale on which the existence of a separate bankruptcy court is based.

If the state-law redemption period is not stayed and is tolled relatively briefly, failure to redeem will result in loss of property from the estate. Viable rehabilitations dependent upon the redemption of property under foreclosure would thus be doomed. In order to implement the rehabilitative purposes of the Code, the need for a stay "to protect the property of the debtor against [the] threat of loss through execution," *In re Thomas J. Grosso Investment, Inc.*, 457 F.2d at 172, is apparent.[12] In short, if policy considerations alone controlled, utilization of the stay provisions of § 362(a) is clearly indicated.[13]

## B.

## CODE SECTIONS AND THEIR LEGISLATIVE HISTORIES

The legislative history of § 362(a) indicates Congress' intent that the statute be construed broadly to further the rehabilitative purposes of the Code:

Ariz.1982); *United Bank of Loves Park v. Dohm (Matter of Dohm)*, 14 B.R. 701 (Bankr.N.D.Ill. 1981).

**10.** Chapter 13 eliminated the distinction between a Chapter XIII "wage earner" and a self-employed business person "in order to afford small sole proprietors as well as wage earners a [cheap and expeditious] alternative to Chapter 11." H.R.Rep. No. 595, 95th Cong., 1st Sess. 118–19 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079 (reproduced in *Collier on Bankruptcy*, App. 2 § II (15th ed. 1984)).

**11.** *See* 11 U.S.C. §§ 1129(b), 1325(a).
In the present proceeding, the parties are apparently aware of the possible inclusion of the property in the debtor's plan if the present motion is decided adversely to the movant. The movant values the property at $15,000.00, while the debtor claims a value of $8,000.00.

**12.** In view of the effective procedure Congress made available to secured creditors in 11 U.S.C. § 362(d), (e), (f) and (g) there need not be, and in the court's experience, there has not been, any difficulty in obtaining prompt relief from stay where appropriate.

**13.** The Supreme Court has observed in another context, "The reorganization effort would have small chance of success ... if property essential to running the business were excluded from the estate. Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate." *United States v. Whiting Pools, Inc.*, —— U.S. ——, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515, 521 (1983) (citation omitted) (construing § 541 to include as "property of the estate" collateral seized prepetition when that property is essential to a reorganization).

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978) U.S.Code Cong. & Admin. News 1978, pp. 5840, 6296 (reproduced in *Collier on Bankruptcy*, App. 2 § II, 3 § V). The language of § 362(a) itself is consistent with this broad construction of the statute. As another court has noted:

The continued running of the redemption period, after the filing of the petition, is "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case" contrary to § 362(a)(2). It also is contrary to § 362(a)(3) which stays "any act to obtain possession of property of the estate or of property from the estate." § 362(a)(4) would also bar the running of the redemption period as an "act to create, perfect, or enforce any lien against property of the estate."

[It is argued] that because no affirmative action is required by the creditor during the running of the redemption period, it does not fit within the terms of "enforcement" or "act" as used in § 362(a). This is too restrictive a definition of those terms. "Enforcement" means causing to have effect or making effective. The running of the redemption period is the act which gives effect to a judgment of foreclosure. An "act" as used in § 362 means more than just an overt action by the creditor. It includes all changes in the relationship between the debtor and his creditors. Standing alone, the running of time is an "act" if it triggers a change in the relationships of the parties.

*Moratzka v. Lanesboro State Bank (In re Johnson)*, 8 B.R. at 374, 7 B.C.D. at 224, 3 C.B.C.2d at 573.

On the other hand the language of § 108(b), set forth at note 7, *supra*, is ambiguous as to its application to periods of redemption. Specifically, the payment of a judgment debt is not plainly within the meaning of "cure [of a] default" or "any ... act" "similar" to it. Section 108 was apparently enacted to replace § 11(e) of the prior Act, 11 U.S.C. § 29(e) (repealed),[14] and it was far from settled at the time the Code was enacted that § 11(e) applied to rights of redemption.[15] Without further

**14.** Section 4–102 of the draft Bankruptcy Act submitted to Congress by the Commission on the Bankruptcy Laws of the United States provided:

(a) *Extensions for Trustee or Receiver.* Where by agreement, order entered in any proceeding, or other applicable law a time fixed for commencing an action on a claim, or for the debtor to file any pleading, demand, notice or proof of claim or loss, or to cure a default or perform any other act has not expired at the date of a petition under this Act, such action may be commenced by the trustee or receiver within two years after the date of the petition or within such further period of time as such agreement, order, or other applicable law may permit, and such pleading, demand, notice, or proof of claim or loss may be filed, or such act may be performed within 60 days after the date of the petition or within such further period of time as such agreement, order, or other applicable law may permit.

H.R.Doc. No. 93–137, 93d Cong., 1st Sess. Pt. II at 68 (1973) (reproduced in *Collier*, App. 2, § I). The draft bill was accompanied by an explanation which stated in relevant part:

*Subdivision (a)* is derived from § 11e of the present Act, but revises its provisions to give at least two years for the initiation of actions on claims of the estate not only where the unexpired period of limitation is imposed by statute but also where it is imposed by agreement or by an order entered in another proceeding. The subdivision preserves the 60-day period allowed by present § 11e for filing pleadings, demands, notices, or proofs of claim or loss and for performing other acts and expressly provides that such other acts may include the curing of defaults.

*Id.*

**15.** Former § 11(e), 11 U.S.C. § 29(e) (repealed), provided in relevant part:

Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any

evidence of legislative intent, it cannot be assumed that Congress codified the scant authority mentioned in note 14, *supra,* when it enacted § 108(b). This additional evidence of legislative intent is not forthcoming. The report which was circulated with the original version of § 108(b) contained in H.R. 8200 and S. 2266 [16] included only the following explanation:

> Subsection (b) gives the trustee two months to take other actions, not covered under subsection (a), such as filing a pleading, demand, notice, or proof of claim or loss (such as an insurance claim), unless the period for doing the relevant act expires later than two months after the date of the order for relief.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 318 (1977) U.S.Code Cong. & Admin.News 1978, p. 6275 (reproduced at *Collier,* App. 2, § II).

It has been argued that "[i]f § 362(a) automatically stays the running of the ... right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee's activity," *Bank of Commonwealth v. Bevan,* 13 B.R.

at 994, 7 B.C.D. at 560. However, removing periods of redemption from the possible operation of § 108(b) still permits the statute to operate upon the "filing of pleadings, demands, notices or proofs of claim or loss" and upon more obvious cases of "cur[ing] a default," *see In re Boca Development Associates,* 21 B.R. 624 (Bankr.S. D.N.Y.1982) (Section 108(b) extends mortgage deed's grace period in which debtor could tender missed mortgage payment and avert acceleration).

On balance, taking into account the language of the two statutes and the legislative history, I conclude that § 362(a) and not § 108(b) more reasonably applies to periods of redemption.[17]

### C.

### STRICT LIEN FORECLOSURE DISTINGUISHED

Even if the cases referred to on p. 159 and note 8, *supra,* were correctly decided and I am in error in the analysis in parts A and B, *supra,* those cases arose in every instance in jurisdictions where the rights of redemption are established by

---

claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period has not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the proceeding or by applicable Federal or State law, as the case may be.

A search by the court has unearthed only dicta in two Circuit Court of Appeal cases, *In re Thomas J. Grosso Investment, Inc.,* 457 F.2d 168, 173 (9th Cir.1972); *Town of Agawam v. Connors,* 159 F.2d 360, 365 (1st Cir.), *cert. denied,* 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290 (1947), and an unsupported statement in *Collier,* 4A *Collier on Bankruptcy,* ¶ 70.16[3] n. 15 at 155 (14th ed. 1978), to the effect that § 11(e) applied to rights of redemption.

**16.** The drafts of § 108(b) contained in H.R. 8200 and S. 2266 were identical and differed from the § 108(b) as passed only in that § 108(b)(1) read simply, "the end of such period." *See* H.R. 8200, 95th Cong., 1st Sess. (1977); S. 2266, 95th Cong., 2d Sess. (1978) (reproduced in *Collier,* App. 3, § III at 325, § VII at 314).

**17.** Although not argued by either party, there are some cases which have discussed the possible utilization of 11 U.S.C. § 105(a) to stay the running of a law day. That section provides that a "bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." However, the use of this section has usually been rejected. *See Johnson v. First Nat. Bank of Montevideo, Minn., supra; First Federal Savings and Loan Association of Oakland v. Rutterbush (In re Rutterbush),* 34 B.R. 101 (E.D.Mich.1982). *But see Bank of Commonwealth v. Bevan, supra.* I agree that in view of the existence of §§ 362 and 108, dependence upon § 105(a) is strained and unnecessary.

statute *after* a foreclosure by sale procedure has been concluded.

As set forth in Part III, *supra,* in Connecticut, the length of the redemption period is set by the state court in its discretion; it is not supplied by statute. Before the expiration of the redemption period, either party may reopen the judgment to have a new "law day" set. Conn.Gen.Stat. § 49–15. The "law day" is part of the foreclosure judgment itself and a product of the litigation between the parties.

 In a Connecticut foreclosure, entry of the foreclosure judgment works no change in title to the property. *City Lumber Co. of Bridgeport, Inc. v. Murphy, supra.* The land owner is divested of his ownership in favor of the foreclosing lienor only when the redemption period expires. *Id.* In Connecticut, when a bankruptcy petition is filed during the redemption period, it is the ownership of the property which passes into the estate and not merely a statutory post-sale redemption right subject to extinction by the passage of the statutory period. *Cf. Johnson v. First Nat. Bank of Montevideo, Minn., supra,* ("[I]t is only the right of redemption rather than the property itself, which passes into the bankruptcy estate."); *First Fin. Sav. and Loan Ass'n v. Winkler, supra* ("After a creditor-mortgagee obtains entry of a judgment of foreclosure and sale, the mortgagor's *only* substantive legal or equitable right is his right to redeem the property ....") (emphasis in original); *Cramer v. Markee (Matter of Markee), supra* ("The estate obtained only the interest of the ... mortgagors under Idaho law following foreclosure and sale. That right is limited solely to the ability to redeem within the statutory period ...."). Consequently, it is a transfer of ownership, rather than the extinction of a statutory right by its own terms, which is worked by the passing of the "law day." This transfer of ownership is not accomplished by operation of a statute but by the litigated terms of the creditor's foreclosure judgment. As a result, "the operation of [the foreclosure] judg-

ment voluntarily and deliberately obtained and pursued to a culmination," *City Lumber Co. of Bridgeport, Inc.,* 120 Conn. at 25–26, 179 A. at 343, is considered to be the creditor's appropriation of the land towards payment of the debt it secures, *id.*

In the light of Connecticut strict foreclosure procedure, I am convinced the involuntary transfer of ownership worked by the terms of the strict foreclosure judgment is the very thing which § 362(a) was designed to prevent. The transfer of debtor's ownership of the property pursuant to the litigated terms of movant's foreclosure judgment is "the ... continuation ... of ... a [foreclosure] proceeding against the debtor that was ... commenced before the commencement of the case under this title," within the meaning of § 362(a)(1). It is "the enforcement, against ... property of the estate, of a [foreclosure] judgment obtained before the commencement of the case under this title," within the meaning of § 362(a)(2). It is "an[ ] act to obtain possession of property of the estate," within the meaning of § 362(a)(3). It is "an[ ] act to ... enforce a[ ] lien against property of the estate," within the meaning of § 362(a)(4). And it is "an[ ] act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title," within the meaning of § 362(a)(6). Consequently, § 362(a) has stayed the running of the law day since the filing of the petition and the automatic entry of the order for relief, *see* 11 U.S.C. § 301, and the property remains as part of the estate.

## V.

## CONCLUSION

The parties having stipulated that the sole question to be resolved on the present motion [18] is whether or not ownership of the property remains in the estate, and having concluded for the reasons stated above that it does, the motion for relief

---

**18.** This is a final hearing.

from stay must be, and hereby is, denied. It is

SO ORDERED.