## In re BEVERAGES INTERNATIONAL, LTD. d/b/a N.P. Beverages, Debtor.

## BEVERAGES INTERNATIONAL, LTD., Plaintiff,

v.

## SCHENLEY AFFILIATED BRANDS CORP., Defendant.

### Bankruptcy No. 84–895–JG. Adv. No. 85–346.

United States Bankruptcy Court, D. Massachusetts.

June 19, 1986.

Geraldine L. Brotherton, Boston, Mass., for debtor/plaintiff.

James C. Gross, Boston, Mass., Victor Bass, Henry Boroff, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This matter is before the Court on the complaint of Beverages International, Ltd. ("Beverages" or the "Debtor") against Schenley Affiliated Brands Corp. ("Schenley"). Beverages seeks a declaratory judgment that the product line supplied by Schenley to Beverages is property of the estate and, as such, transferable to United Liquors, Ltd. ("United"). The Court conducted a pre-trial hearing on October 15, 1985 at which time the parties indicated that the legal issues raised by Beverages' complaint and Schenley's answer could be resolved upon an agreed statement of facts.

### FACTS [1]

Beverages is a wholesaler and distributor of alcoholic beverages licensed to do business in the Commonwealth of Massachusetts. Schenley is a manufacturer of alcoholic beverages and also is licensed to do business in Massachusetts.

In or around 1967, Beverages began purchasing certain alcoholic beverages from Schenley, including but not limited to, Dewars Scotch (the "product"). In the normal course of such transactions, Beverages would place orders for various amounts of Dewars Scotch with Schenley, and Schenley, in turn, would process Beverages' orders, invoicing them at the time of ship-

1. The Court has supplemented the agreed statement of facts where appropriate with information available from the Court's dockets and the Debtor's file.

ment. The terms of each sale were governed by the terms contained on each invoice. Schenley and Beverages, throughout the course of their relationship, never had a written contract governing the purchase and sale of the product.

On or about April 19, 1984, Beverages placed an order for the purchase of Dewars Scotch with Schenley. Approximately two weeks later, on or about May 4, 1984, Schenley filled the order. As of the latter date, Beverages was seriously in arrears in its payments to Schenley. Indeed, Beverages owed Schenley in excess of $300,000. No further orders were placed by Beverages with Schenley until approximately ten months later when, on March 1, 1985, Beverages contacted Schenley.

In the meantime, on July 6, 1984, an involuntary petition under Chapter 11 of the Bankruptcy Code was filed against Beverages.[2] Beverages subsequently filed a voluntary petition under Chapter 11 of the Bankruptcy Code, and an order for relief under that Chapter was entered on July 18, 1984.[3]

Approximately six months later, on January 21, 1985, Beverages filed a Second Amended Plan of Reorganization (the "plan"). The Court, per Judge Lavien, entered an order confirming the plan on January 28, 1985. The plan incorporated by reference an offer to purchase certain assets of the Debtor (and N.P. Beverage Corp., a wholly owned subsidiary of the Debtor) by United. Specifically, as set forth in the plan, United offered to pay $695,000 for the following assets of the Debtor:

   (a) 100% of the common stock of Beverages International, Ltd. and N.P. Beverages Corp. (N.P.);

   (b) Beverages International, Ltd.'s and N.P. Beverages Corp.'s right, title and interest in and to the names:

   1) Beverages International, Ltd.;

   ii) N.P. Beverages, Inc.;

   iii) N.P. Beverages Corp.; and

   iv) Any trade or service name or mark with respect to the foregoing;

   (c) Beverages International, Ltd.'s and N.P. Beverages Corp.'s right, title and interest in and to product lines supplied to Beverages International, Ltd. and/or N.P. Beverages Corp. by the following suppliers:

   i) Maidstone Wine & Spirits, Inc.;

   ii) Schenley Industries, Inc. [sic];

   iii) Almaden Vineyards, Inc.; and

   iv) Glenmore Company.

Pursuant to the terms of the confirmed plan, essentially a plan of liquidation, all of Beverages common stock was cancelled and new stock was issued to United. Together with the stock, United acquired certain of Beverages assets. The closing of this transaction took place on February 28, 1985. With the exception of Schenley's product, United acquired the product lines offered by the aforementioned suppliers. Schenley, however, refused and continues to refuse to acknowledge the transfer of its product. Anticipating the problem, United and Beverages agreed that if the debtor could not obtain, by February 28, 1986,[4] an order of this Court ruling that Schenley's product is a transferable asset of its bankruptcy estate, the purchase price would be reduced by $347,500. This agreement was spelled out in the plan. Furthermore, United's offer, dated September 11, 1984, and subsequent amendments thereto were attached to the plan.

---

**2.** The agreed statement of facts erroneously indicates that the involuntary petition was filed under Chapter 7 of the Bankruptcy Code on July 7, 1984. Confusion may stem from the fact that the order for relief was granted under Chapter 7. However, neither the Court nor the parties ever considered Beverages as a Chapter 7 debtor.

**3.** On the same day, the Court approved a stipulation by and between the Debtor, the petition-

ing creditors and Patriot Bank, N.A., whereby the Bank agreed to advance funds for the Debtor's necessary operating expenses through July 31, 1984 "in an amount not to exceed the lesser of $10,000 per week and [sic] 10% of sums paid the Bank pursuant to paragraph 4(c) for the week preceding the week in which such advances are required."

**4.** This date was extended ninety days by order of the Court on February 27, 1986.

On March 1, 1985, Beverages, its stock now owned by United, placed an order with Schenley to purchase a certain amount of Dewars Scotch. On March 21, 1985, in a letter to Beverages, Schenley responded that it would not fill the order in question. As grounds for its refusal, Schenley cited *inter alia* "... the fact that Schenley ... has not made any sales of any of its product lines to Beverages International since May 1984, a period of more than six months ..., and therefore, Schenley is not obligated or required to sell its products to Beverages International."

On April 12, 1985, Beverages commenced a proceeding before the Alcoholic Beverages Control Commission (the "ABCC") by filing a letter with the ABCC in which it objected to Schenley's refusal to sell, and sought relief pursuant to M.G.L. ch. 138, § 25E.[5]

On April 17, 1985, the ABCC forwarded a letter to Schenley which ordered Schenley "to continue to make sales and deliver same to Beverages International, Ltd." pending the ABCC's decision on the merits of the proceeding. Pursuant to the terms of the ABCC's order of April 17, 1985, Schenley began making sales and deliveries of Dewars Scotch to Beverages.

On April 26, 1985, Schenley filed a Motion For Summary Determination And Dismissal with the ABCC in which it requested that Beverages' petition be dismissed. Less than one month later, on May 21, 1985, the ABCC held a hearing on the merits of the proceeding. Oral argument was heard, and the issue was briefed by the parties.

On November 19, 1985, the ABCC issued its decision. The ABCC found that there had been a ten month period wherein there had been no sales of alcoholic beverages by Schenley to Beverages. The ABCC further found that, even though Beverages had been involved in a bankruptcy proceeding, "it could have, with some difficulty perhaps, continued to do business with Schenley. Instead, it [Beverages] allowed that relationship to lapse."

## CONCLUSIONS OF LAW

Two issues are before the Court: 1) Whether Beverages distribution arrangement with Schenley with respect to Dewars Scotch is an asset of the estate, and 2) If so, whether that asset is transferable to United. A synopsis of the arguments presented by Beverages and Schenley facilitates the resolution of these issues.

---

5. Section 25E provides:

It shall be an unfair trade practice and therefor unlawful for any manufacturer, winegrower, farmer-brewer, importer or wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer, winegrower, farmer-brewer, importer or wholesaler has made regular sales of such brand item during a period of six months preceding any refusal to sell.

Any manufacturer, importer or wholesaler shall forward a notice in writing to the wholesaler, to whom it has sold any brand item, prior to discontinuing sales to such wholesaler of such brand item and shall forward copy of said notice to the commission. The notice of discontinuance of sale shall be furnished by the manufacturer, importer or wholesaler to the wholesaler being discontinued at least one hundred and twenty days before the effective date of such discontinuance. The notice shall state the specific grounds for such discontinuance. Either party may appeal to the commission for a hearing on the notice of discontinuance and the commission shall make a determination after hearing on the issue of good cause for discontinuance. Upon application by the wholesaler to the commission, the commission shall order the manufacturer, importer or wholesaler giving notice of refusal to sell to continue to make sales in the regular course to such wholesaler pending determination by the commission on the merits of said appeal. The commission shall after notice to all parties and hearing, make a determination on the issue of good cause and grant such relief as may be appropriate under the circumstances. Good cause as used herein shall be limited to the following conduct:

(a) disparagement of the product so as to impair the reputation of the brand owner or the brand name of any product,

(b) unfair preferment in sales effort for brand items of a competitor,

(c) failure to exercise best efforts in promoting the sale of any brand item,

(d) engaging in improper or proscribed trade practices, or

(e) failure to comply with the terms of sale agreed upon between supplier and wholesaler. M.G.L. ch. 138, § 25E (West 1974 & Supp.1986).

Beverages asserts that Schenley's product is property of the estate pursuant to 11 U.S.C. § 541(a)(1).[6] Although it concedes that Schenley would not be required to sell its product to any wholesaler in the absence of an agreement, it maintains that its nearly exclusive seventeen year ongoing business relationship with Schenley in Massachusetts cannot be legally terminated under the provisions of existing bankruptcy laws and laws enacted in Massachusetts.

Specifically, Beverages argues that M.G.L. ch. 138, § 25E bolsters its view that its relationship with Schenley is an asset of the estate by recognizing the extremely valuable right of a wholesaler to purchase products from a manufacturer and by affording protection against unlawful termination of that right. However, Beverages maintains that resort must be had to federal bankruptcy law to interpret the rights of the Debtor to Schenley's product since section 25E is totally silent with respect to bankruptcy proceedings.

Beverages cites 11 U.S.C. §§ 362(a)[7] and 108(b)[8] of the Bankruptcy Code in support of its position. It notes that the only way Schenley could have terminated the Debtor's right to purchase Dewars Scotch from Schenley would have been for Schenley to file a motion for relief from the automatic stay. It then argues that its Chapter 11 proceeding suspended the time within which the Debtor had to perform an "act" within the meaning of section 108(b)(1). Because the Debtor was not conducting regular business, Beverages further contends section 25E and section 108(b)(2) are inapplicable. In short, Beverages states that section 362 of the Bankruptcy Code tolled the running of the six month period set forth in section 25E. Finally, Beverages argues that Schenley has no good cause to terminate the Debtor's rights to the product line and that Schenley did not properly comply with the provisions of M.G.L. ch. 138, § 25E in taking steps to terminate the product line, notwithstanding 11 U.S.C. § 362.

Naturally, Schenley's position is antithetical to that of Beverages. Schenley contends that without section 25E Beverages could assert no legitimate basis for alleging that it has the right to require Schenley to sell its product to Beverages. Nevertheless, Schenley argues that section 25E is inapplicable because the protection afforded by the statute is only available when there is a business relationship existing at the time the supplier attempts to terminate the relationship.

Schenley admits that it had an ongoing relationship with Beverages when the bankruptcy proceeding was commenced.

---

**6.** Section 541(a)(1) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1) (Law.Co-op.1986).

**7.** Section 362(a)(1) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....
11 U.S.C. § 362(a)(1) (Law.Co-op.1986).

**8.** Section 108(b) provides:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, *or perform any other similar act,* and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order for relief.
11 U.S.C. § 108(b) (Law.Co-op.1986) (emphasis supplied).

However, Schenley argues that the Debtor permitted its relationship with Schenley to lapse, despite the fact that as a debtor in possession it had the right to operate its business and place orders with Schenley. According to Schenley, neither section 362(a) nor section 108(b) benefit Beverages. Specifically, Schenley argues that section 362(a) is not concerned with the tolling of time or the running of specific time periods and, even assuming *arguendo* that section 108(b)(2)) were applicable to Beverage's rights under section 25E, whatever grace period may have been available to Beverages had long since expired by March 1, 1985 when "new" Beverages attempted to purchase Dewars Scotch from Schenley. Lastly, Schenley argues that, even assuming that Beverages has the right to require Schenley to sell Dewars to it, that right is not transferable to United.

The Court is sympathetic to the Debtor's position and the concomitant prospect of making $347,500 available to unsecured creditors of the bankruptcy estate. Nevertheless, the Court, though impressed with the Debtor's brief, is persuaded by Schenley's argument.

■ Clearly, section 541(a) of the Bankruptcy Code is broad enough to encompass what may best be characterized as Beverages right, assuming an ongoing business relationship of six months or more, to have the termination of its relationship with Schenley governed by section 25E. Case law and the legislative history make it plain that section 541 was "intended to be broad and was designed to include all kinds of property, tangible or intangible...." *Matter of Varisco*, 16 B.R. 634, 637 (Bankr.M. D.Fla.1981), *citing* H.R. 95–595, 95th Cong., 1st Sess. 1977, pp. 367–68, S.R. 95–989, 95th Cong., 2d Sess. 1978, pp. 828–30, U.S. Code Cong. & Admin. News 1978, p.

5787. Indeed, the United States Supreme Court gave a wide reading to section 541 and what should be considered property of the estate when it stated that "a reorganization effort would have small chance of success ... if property essential to running the business were excluded from the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). *See also In re Professional Sales Corp.*, 48 B.R. 651, 660 (Bankr.N.D.Ill.1985) (The fact that an interest is conditional or revocable is not decisive.... If the disputed interest adds great value to the estate ... it was intended by Congress to fall within the scope of section 541.")

■ However, simply because Beverages' right to a continuation of the supply of Schenley's product may be considered an intangible asset of the estate at the time the petition was filed or the order for relief was entered does not mean that Beverages' right continued to be property of the estate at the time the plan was confirmed and "new" Beverages attempted to purchase product from Schenley. The Court is unpersuaded by Beverages' arguments that the operation of the automatic stay suspended the period within which it had to purchase products from Schenley to be afforded the protection of section 25E. Pursuant to section 25E, Beverages had the right from May 4, 1984 (the date of the last sale from Schenley) until on or about November 4, 1984 to order products from Schenley and thereby prevent its sales relationship and rights under section 25E from lapsing. Section 362(a), while it automatically stays certain creditor actions upon the filing of a bankruptcy petition, does not and was not intended to toll the running of specific time period.[9] *Moody v. Amoco Oil*

---

9. Interestingly, Beverages, in its plan, states: "Debtors specifically assume the executory contracts with Maidstone Wine & Spirits, Inc., Schenley Industries, Inc., Almaden Vineyards, Inc., Glenmore Company and any other distributorship agreement to which either debtor is a party." However, in its brief, Beverages neither explicitly argued that its seventeen year distributorship relationship with Schenley amounted to

an executory contract capable of being assigned to United, even though it is well settled that franchise or distributorship arrangements are executory contracts within the scope of section 365 of the Code, *In re Tirenational Corp.*, 47 B.R. 647 (Bankr.N.D.Ohio 1985); *In re Dartmouth Audio, Inc.*, 42 B.R. 871 (Bankr.N.H. 1984), nor that United provided Schenley with adequate assurance of future performance. The

Co., 734 F.2d 1200, 1213 (7th Cir.1984); *In re Crabb*, 48 B.R. 165, 167 (Bankr.D.Mass. 1985); *In re Players' Pub, Inc.*, 45 B.R. 387, 392 (Bankr.D.Mass.1985); *In re Anne Cara Oil Co., Inc.*, 32 B.R. 643, 647 (Bankr.D.Mass.1983). Stated another way, section 362(a) does not enlarge the rights of a debtor under a contract nor prevent the post-petition termination of a contract by its own terms. *Moody v. Amoco Oil Co.*, 734 F.2d at 1213; *In re Crabb*, 48 B.R. at 167; *In re Advent Corp.*, 24 B.R. 612, 614 (1st Cir.B.A.P.1982).

In *In re Crabb*, for example, the debtor, who filed a Chapter 11 petition on October 5, 1983, moved the Court for authority to assume a lease entered into on April 16, 1982. Provided there were no defaults, the lease granted the debtor the option to extend the lease, which by its terms expired on May 31, 1984, for an additional two years by giving notice of his intent to do so by December 1, 1983. The landlord objected to the debtor's motion, arguing that because the debtor failed to timely exercise the option to extend the lease, there was not an executory contract or unexpired lease to assume. The debtor responded, arguing that section 362(a) automatically stayed the expiration of the option period. The court rejected the debtor's position. It stated:

> The automatic stay provisions of § 362 have no effect on the running of the option. This section applies to judicial and quasijudicial proceedings to recover a claim against the debtor or enforce a pre-petition 'judgment against the debtor' or similar acts. Section 362 does not stop the clock on the provisions of contractual agreements.

*In re Crabb*, 48 B.R. at 167. *See also In re Intermet Realty Partnership*, 26 B.R. 383, 388 (Bankr.E.D.Pa.1983) (filing of petition for reorganization does not expand rights of a debtor under option agreement that expired post-petition).

Although Beverages does not argue that it has a valid and binding contractual agreement with Schenley, the Debtor's rights vis a vis Schenley are not unlike those embodied in an option agreement. In a sense, Beverages had the option to maintain its relationship with Schenley so as to be afforded the protection of section 25E or let that relationship lapse. Thus, this Court finds that the automatic stay did not relieve Beverages of the need to act affirmatively in order to take advantage of section 25E's protection.

The cases cited by Beverages in its memorandum do not alter the Court's decision. Beverages primarily relies on two cases: *In re St. Amant*, 41 B.R. 156 (Bankr.D. Conn.1984), and *In re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr.N.D.Ill.1984). Both cases are legally and factually distinguishable from the instant case. In the former case, the issue before the court was whether Connecticut's strict foreclosure law was tolled entirely by the automatic stay or limited to a sixty day period under 11 U.S.C. § 108(b). The court found that section 362(a) applied and that section 108(b) was inapplicable to the running of a post-petition period of redemption, reasoning that section 108(b)'s sixty day extension of a redemption period was totally inadequate to effectuate the salutory purposes of bankruptcy law. *In re St. Amant*, 41 B.R. at 160. *See also In re Jenkins*, 19 B.R. 105 (D.C.Colo.1982); *In re H & W Enterprises, Inc.*, 19 B.R. 582 (Bankr.N.D. Iowa 1982). Careful scrutiny of the *St. Amant* and other cited cases reveal, however, that courts were actually enjoining the continuation of actions initiated by creditors and not tolling the statutory period. Furthermore, a majority of courts have held that section 362(a) does not toll or suspend the running of statutory redemption periods. *In re Glenn*, 760 F.2d 1428, 1437–40 (6th Cir.1985); *Johnson v. First National Bank*, 719 F.2d 270, 276–77 (8th Cir.1983), *cert. denied*, 465 U.S. 1012,

---

assumption that an executory contract existed between Beverages and Schenley at the time the petition was filed does not change the Court's view that section 362(a) did not toll the running

of the six month period set forth in section 25E and that whatever agreement existed between the parties, contractual or otherwise, lapsed.

104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). They reason that "a creditor's affirmative act is required for § 362(a) to apply, and the mere passage of time working in the creditor's favor will not suffice to activate § 362(a)." *In re St. Amant*, 41 B.R. at 159.

In *In re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr.N.D.Ill.1984), the court held that a debtor's building permits issued prior to the filing of the bankruptcy petition, are property of the estate and that the automatic stay provisions prevent a political subdivision, Lee County, Florida, from changing the debtor's density zoning under a county ordinance enacted four months after the debtor filed its Chapter 11 petition. The court stated: "[as] the debtor's permits were valid on July 16, 1982, when the debtor filed its chapter 11 petition, the automatic stay protects them against expiration or revocation. Thus the DSO [the county ordinance], cannot be retroactively applied to this case." *Id.* at 853. While the court's language superficially supports the Debtor's position, it is plain from a careful review of the court's opinion that it was concerned with the retroactive application of an ordinance by a governmental unit and the cancellation of a previously valid building permit after the commencement of the case. Clearly, *In re Island Club Marina, Ltd.* is unlike the instant case because the county enacted a new zoning law and contemplated its retroactive application to the debtor, affirmative acts, whereas Schenley took no action with respect to terminating its distributorship arrangement with Beverages.

With respect to section 108(b), a section of the Bankruptcy Code discussed by both parties in their briefs, the Court finds that the statutory language is inapplicable. The Court is incapable of seeing how a decision by the Debtor to purchase product from Schenley constitutes an "act" similar to the filing of a pleading, demand, notice or proof of claim or loss, or the curing of any default. In any event, section 108(b) suspends a debtor's obligation to do a certain act before the later of 1) the end of the period in which the debtor would normally have to file a pleading or demand, including a suspension of such period occurring on or after the commencement of the case, or 2) sixty days after the order for relief. Beverages argues subsection (1) of section 108(b) is applicable, if at all, because, according to it, section 362(a) suspends its obligation to perform, whereas Schenley assumes *arguendo* that subsection (2) applies. Since the Court finds that section 362(a) does not toll the running of the statutory period embodied in section 25E, if section 108(b) applies at all, subsection (2) sets forth the relevant grace period. However, section 108(b)(2) does not benefit Beverages. Applying section 108(b)(2), Beverages would have had until September 7, 1984, i.e., sixty days after the entry of the order for relief, to timely place an order with Schenley as required under section 25E. Even tacking sixty days on to the six month period set forth in section 25E, thereby extending the November 4, 1984 date to January 4, 1985, does not assist the Debtor.

As a final point, the Court concludes that, even assuming Beverages' rights vis a vis Schenley are an interest of the estate not subject to expiration due to Beverages' failure to maintain an ongoing business relationship because of section 362(a), that interest would not be transferable. In reaching this conclusion, the Court is guided by the provisions of 11 U.S.C. § 365 concerning executory contracts and unexpired leases. Section 365(f)(1) provides:

Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contact or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not

there has been a default in such contract or lease.

11 U.S.C. § 365(f)(1) (Law.Co-op.1986). Section 365(c), in relevant part, provides:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) *applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance* from or rendering performance to an entity other than the debtor or the debtor in possession or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; or

11 U.S.C. § 365(c)(1) (Law.Co-op.1986) (emphasis supplied).

Schenley has steadfastly refused to consent to an assignment by Beverages or an assumption by United of the distribution rights to its product. Furthermore, the Court is convinced that applicable law excuses Schenley from accepting performance by United (or "new" Beverages). In *Wetherell Brothers Co. v. United States Steel Co.*, 105 F.Supp. 81 (D.Mass.), *aff'd*, 200 F.2d 761 (1st Cir.1952), the court considered an attempted assignment of an exclusive sales agency contract. Wetherell Brothers Co. sold its assets, excluding cash and account receivables, to a third party, which adopted its name. It also attempted to transfer a sale agency contract with the defendant, United States Steel Co. ("USS"). The court held that the assignment, without the consent of USS, was ineffective for the purpose of substituting the plaintiff for the assignor corporation with whom USS contracted. The court recognized that sales agencies, which are certainly comparable to distribution agreements, involve relationships of trust and confidence. It stated:

'In dealing with natural persons in matters of trust and confidence, personal character is or may be a dominant factor. In similar transactions with a corporation, a substitute for personal character is the charter of rights of the corporation, the limits placed on its power, especially to incur debt, and the statutory liability of its officers and stockholders.' *Id.* at 86.

The Court notes that section 25E also implicitly recognizes the importance of the relationship between supplier and wholesaler by providing an initial six month period during which time the supplier may evaluate the wholesaler's performance and terminate the supply of alcoholic beverages with or without cause. Schenley emphasizes the unfairness of forcing a supplier under section 25E to involuntarily become involved in a sales relationship with an assignee of the original wholesaler, a party who may be unknown to the supplier or with whom the supplier would not wish to deal. The Court recognizes this unfairness.

In view of the foregoing, the entire record of the case, and the arguments of counsel, whether or not mentioned herein, the Court hereby orders the entry of judgment for Schenley and against Beverages.