**In re SEVEN STARS RESTAURANT, INC. d/b/a Seven Stars Restaurant & Diner, Debtor.**

**Bankruptcy No. 90 B 21137.**

United States Bankruptcy Court, S.D. New York.

Dec. 19, 1990.

___

Cerrato, Sweeney, Cohn, Stahl & Vaccaro, White Plains, N.Y., for claimants.

Fischoff & Gelberg, Garden City, N.Y., for debtor.

## DECISION ON MOTION FOR DETERMINATION OF EXISTENCE OF LEASE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The movants, John Mountroukas, Christ Mountroukas, Peter Modroukas, Steve Moundroukas and Seven Star Diner, Ltd. (The "movants") are the record owners of nonresidential real property on Fort Hill Road, Yonkers, New York (the "Property"), which they leased to the debtor, Seven Stars Restaurant, Inc., for the operation of a diner. The movants seek an order for repossession of the premises for various reasons, as follows: (1) The debtor has failed to perform timely its post-petition obligations in violation of 11 U.S.C. § 365(d)(3). (2) A prepetition termination of the lease and the debtor's failure to perform its post-petition obligations are sufficient cause for relief from the automatic stay in accordance with 11 U.S.C. § 362(d)(1). (3) The debtor's failure to perform its post-petition lease obligations constitutes a rejection of the lease in accordance with 11 U.S.C. § 365(d)(4). (4) Alternatively, the movants seek an order compelling the debtor to assume or reject the lease in question within sixty days from the filing of the Chapter 11 petition.[1]

## FINDINGS OF FACT

1. On November 8, 1990, the debtor filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in operation of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. On August 12, 1987, the movants leased the nonresidential property which they owned on Fort Hill Road, Yonkers, New York to the debtor for the purpose of operating a diner or restaurant on the premises at a rental of $12,000.00 per month.

---

1. Although neither side submitted any briefs as required by local Rule 13(b), this court will decide the issues on their merits.

3. As additional rent, the written lease between the parties, dated August 12, 1987 (the "Lease"), provides that the debtor was required to pay the real estate taxes and water and sewer charges for the premises and to keep the premises insured for $1,200,000.00 against casualty, fire and hazard and to maintain liability insurance of $5,000,000.00, with respect to which the debtor was required to provide the movants with proof of such insurance annually.

4. Paragraphs seventeen, eighteen and twenty of the Lease provide specific default and termination clauses as follows:

Seventeenth—In case of violation by the Tenant of any of the covenants, agreements and conditions of this lease, ... and upon failure to discontinue such violation within ten days after notice thereof given to the Tenant, this lease shall thenceforth, at the option of Landlord, become null and void, and the Landlord may re-enter without further notice or demand ... No waiver by the Landlord of any violation or breach of condition by the Tenant shall constitute or be construed as a waiver of any other violation or breach of condition, nor shall lapse of time after breach of condition by the Tenant before the Landlord shall exercise its option under this paragraph operate to defeat the right of the landlord to declare this lease null and void and to re-enter upon the demised premises after the said breach or violation.

Eighteenth—All notices and demands, legal or otherwise, incidental to this lease, or the occupation of the demised premises, shall be in writing. If the Landlord ... desires to give or serve upon the Tenant any notice or demand, it shall be sufficient to send a copy thereof by registered mail, addressed to the Tenant at the demised premises or to leave a copy thereof with a person of suitable age found on the premises, or to post a copy thereof upon the door to the said premises.

Twentieth—In the event that the Tenant shall remain in the demised premises after the expiration of the term of this lease without having executed a new written lease with the Landlord, such holding over shall not constitute a renewal or extension of this lease. The Landlord may, at its option, elect to treat the Tenant as one who has not removed at the end of his term, ...

5. Prior to August 29, 1990, the debtor defaulted under the terms of the lease by failing to pay monthly rent, real estate taxes, water charges, and sums due pursuant to promissory notes when due.

6. Pursuant to the terms of the Lease, on August 13, 1990, the movants served the debtor with Notice of Default as follows:

August 13, 1990
REGISTERED MAIL, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND REGULAR MAIL

SEVEN STARS RESTAURANT, INC.
c/o Nicholas Kordas, Esq.
132–56 Steinway Street
Long Island City, New York 11101

SEVEN STARS RESTAURANT, INC.
1 Fort Hill Road
Yonkers, New York 10710

Attention: James Tsiropoulos, President
Re: Lease Agreement Between Seven Star Diner Ltd., John Mountroukas, Christ Mountroukas, Peter Modroukas, and Steve Moundroukas, as Landlord, and Seven Stars Restaurant, Inc., as Tenant, Dated 8/1/87
Gentlemen:

The undersigned Landlords under the aforementioned lease (the "Lease") hereby give you written notice of the following breaches and/or defaults, to wit:

1. Failure to pay the following real estate taxes and water bill when due:

| a) | 1989–90 City tax | – | $31,879.21 |
| b) | 1990 County Tax | – | $10,249.00 |
| c) | 1990–91 City Tax (⅓) | – | 12,567.74 |
| d) | Water bill due 7/20/90 | – | 2,546.72 |

amounting to $57,242.67, plus interest and penalties;

2. Failure to pay the monthly installment of rent due on August 12, 1990, in the sum of $12,000.;

3. Unauthorized use of a portion of the Lease premises for the sale and/or solicitation for sale of motor vehicles; and

4. Failure to pay two separate promissory notes (the "Notes"), each made by Seven Stars Restaurant, Inc. to Seven Star Diner Ltd. in the face amount of $17,328.66, No. 35 due 7/12/90 and No. 36 due 8/12/90.

Pursuant to par. 7 of the Rider to the Lease, and par. 2 of the Notes, each of the aforementioned defaults under the Notes are events of default under the Lease.

If each of the aforementioned defaults are not cured within fifteen (15) days from the date hereof, the undersigned Landlords shall, among other available remedies, seek to recover the premises.

Additionally and commencing with the next installment of rent due September 12, 1990, demand is made for you to pay 1/12th of all real estate taxes, water and sewer charges in accordance with he (sic) provisions contained in par. 4 of the Lease.

SEVEN STAR DINER LTD.
By:/s/_____
    PETER MODROUKAS, President
    /s/_____
    JOHN MOUNTROUKAS
    /s/_____
    CHRIST MOUNTROUKAS
    /s/_____
    PETER MODROUKAS
    /s/_____
    STEVE MOUNDROUKAS

7. The debtor failed to cure the lease defaults, with the result that on August 29, 1990, the movants served the debtor with a Notice of Termination as follows:

August 29, 1990
REGISTERED MAIL, CERTIFIED MAIL, RETURN RECEIPT REQUESTED, and REGULAR MAIL

SEVEN STARS RESTAURANT, INC.
c/o Nicholas Kordas, Esq.
132–56 Steinway Street
Long Island City, New York 11101

SEVEN STARS RESTAURANT, INC.
1 Fort Hill Road
Yonkers, New York 10710

Attention: James Tsiropoulos, President
    Re: Lease Agreement Between Seven Star Diner Ltd., John Mountroukas, Christ Mountroukas, Peter Modroukas, and Steve Moundroukas, as Landlord, and Seven Stars Restaurant, Inc., as Tenant, Dated 8/1/87.

Gentlemen:
    You have failed to correct and/or cure the breaches and/or defaults specified in our prior letter dated August 13, 1990.

In view thereof, please be advised that the undersigned Landlords exercise the option contained in paragraph "seventeen" of the Lease and hereby declare said lease to be null and void, terminated, and of no further force and effect.

Demand is hereby made that you immediately quit and surrender the Lease premises to the undersigned Landlords.

SEVEN STAR DINER LTD.
BY:/s/_____
    PETER MODROUKAS, President
    /s/_____
    JOHN MOUNTROUKAS
    /s/_____
    CHRIST MOUNTROUKAS
    /s/_____
    PETER MODROUKAS
    /s/_____
    STEVE MOUNDROUKAS

8. On October 30, 1990, the movants commenced a summary holdover proceeding against the debtor in the City Court of the City of Yonkers, by serving the debtor with a Notice of Petition to Recover Real Property, and to obtain a final judgment of eviction awarding possession of the premises to the movants. The petition in the holdover proceeding was returnable on November 9, 1990. However, the debtor filed its Chapter 11 petition with this court on November 8, 1990, the day before the return date of the state court eviction proceeding.

9. Peter Modroukas and Christ Mountroukas testified in this court on December 17, 1990, that the movants received no response from the debtor to their Notice of

Default, dated August 13, 1990, or to their Notice of Termination, dated August 29, 1990. Additionally, they testified that to date the movants have received no rent from the debtor since the August, 1990 notices. The witnesses also testified that the debtor failed to cure the real estate tax obligations, water and sewer charges and the insurance requirement specified in the lease for the premises in question.

10. The debtor's counsel offered no witnesses or evidence on behalf of the debtor, but stated that the debtor had moved for an extension of time for the debtor to perform the post-petition obligations imposed upon the debtor under 11 U.S.C. § 365(d)(3) with respect to its nonresidential lease with the movants. The debtor's motion is returnable on December 21, 1990, a few days after the hearing in connection with the movants' motion.

## DISCUSSION

The movants contend that the Lease in question was validly terminated by them before the debtor filed its Chapter 11 petition and that the debtor has no property interest in the lease subject to the automatic stay imposed under 11 U.S.C. § 362(a) or assumable under 11 U.S.C. § 365(b).

In determining the measure of a debtor's interest in property, a bankruptcy court must look to state law, which creates and defines property rights. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Chicago Bd. of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). Under New York Law, a residential tenant has a statutory 10–day period following the final disposition of the eviction proceeding pursuant to Section 753(4) of McKinney's Real Property And Proceedings Law ("RPAPL") to correct a breach of the lease before a warrant of eviction will be issued by the court. *See Post v. 120 East End Ave. Corp.*, 62 N.Y.2d 19, 475 N.Y.S.2d 821, 464 N.E.2d 125 (1984). However, as to commercial leases, as involved in the instant case, there is no statutory cure period. A commercial tenant served with a notice of default by the landlord with respect to obli-

gations contained in the lease and a direction to cure such defaults within time specified in the lease, may toll the landlord's termination of the lease by obtaining a temporary injunction from the state court suspending the running of the cure period, and if not, the lease will be deemed terminated at the expiration of the stated period. *First Nat'l Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968); *Heavy Cream, Inc. v. Kurtz*, 146 A.D.2d 672, 537 N.Y.S.2d 183 (A.D. 2nd Dept. 1989). The commercial tenant's failure to obtain a so-called *Yellowstone* injunction results in the termination of the lease in accordance with its terms. (There was a 10–day cure period in the *Yellowstone* case).

The *Yellowstone* Court noted that

[s]hould we hold that the termination of this lease is harsh and inequitable, then the same conclusion can be reached in every instance where a landlord exercises his contractual rights, and, in that event, the right of termination or any other right specified in a lease would be rendered meaningless and ineffectual (citation omitted).

*First Nat'l Stores v. Yellowstone Shopping Center*, 21 N.Y.2d at 638, 290 N.Y.S.2d at 725–726, 237 N.E.2d at 872–873.

In the instant case the movants gave the debtor fifteen days from the August 13, 1990 notice to cure the rent and other defaults. The debtor did not obtain a temporary restraining order, or *Yellowstone* injunction, with the result that the movants mailed a Notice of Termination of the lease to the debtor on August 29, 1990, which effectively terminated the lease in accordance with its terms. As stated in the *Yellowstone* case:

Article Twelfth of the lease, which gives the landlord the right to terminate after a 10–day notice of default, is neither harsh nor inequitable; a landlord's right to terminate a lease based on a tenant's breach of his covenant is commonplace. In essence, this clause allowed the landlord to accelerate the term of the lease if

the tenant failed, after notice, to cure his default.

*First Nat'l Stores v. Yellowstone Shopping Center,* 21 N.Y.2d at 637–638, 290 N.Y.S.2d at 725, 237 N.E.2d at 872.

The movants contend that the debtor should not be permitted to cure the defaults under the lease or to be allowed to extend the time to cure such defaults because the debtor has failed to comply with 11 U.S.C. § 365(d)(3) by failing to perform in a timely fashion all of the post-petition obligations under the Lease, including the payment of rent and additional charges. However, there is a more fundamental reason why the debtor may not cure the defaults under the Lease. The landlord's termination of the Lease in accordance with its terms, following the debtor's failure to cure the defaults after the 15–day cure notice issued by the landlord, bars the debtor from resurrecting the terminated Lease because it may not be included among the debtor's assets.

This interpretation of section 365(e)(1) is consistent with the recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's assets. See *In re Commodity Merchants, Inc.,* 538 F.2d 1260, 1263 (7th Cir.1976); *In re GSVC Restaurant Corp.,* 10 B.R. 300, 302 (D.C.S.D.N.Y. 1980); *In re Youngs,* 7 B.R. 69, 71 (Bkrtcy., D.Mass.1980); *In re Mimi's of Atlanta, Inc.,* 5 B.R. 623, 627–29 (Bkrtcy., N.D.Ga.1980), *aff'd* and remanded, 11 B.R. 710 (D.C.N.D.Ga.1981); *In re Bronx–Westchester Mack Corp.,* 4 B.R. 730, 731 (Bkrtcy., S.D.N.Y.1980); Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code,* 64 Minn.L.Rev. 341, 346 (1980).

*Kopelman v. Helvajian (In re Triangle Laboratories, Inc.),* 663 F.2d 463, 467–468 (3rd Cir.1981). In support of the ruling, the Third Circuit Court of Appeals quoted from this court's decision in *In re Butch-*

*man,* 4 B.R. 379, 381 (Bankr.S.D.N.Y.1980); and said:

When a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow.

*Id.* at 368.

Accordingly, the movant's motion for relief from the automatic stay is granted so that they may pursue their state court action for an order of eviction.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. The movant's request for relief from the stay pursuant to 11 U.S.C. § 362(d)(1) is granted because cause has been shown to support the movants' right to continue with their action for a state court order of eviction.

3. The debtor may not assume the August 12, 1987 written Lease with the movants for the nonresidential real estate in Yonkers, New York because such Lease was terminated by the movants in accordance with its terms before the debtor filed its Chapter 11 petition with this court.

SETTLE ORDER on notice.