**In re WILLS MOTORS, INC., Debtor.**

**Bankruptcy No. 91 B 20690.**

United States Bankruptcy Court,
S.D. New York.

Oct. 22, 1991.

---

William E. Bandon, P.C., White Plains, N.Y., (Pitney, Hardin, Kipp & Szuch, Morristown, N.J. of Counsel), for Volvo North America Corp.

Michael R. Gottlieb, Middletown, N.Y., for debtor.

Winick & Rich, P.C., New York City, for Barclays Bank of New York, N.A.

## DECISION ON MOTION FOR RELIEF FROM STAY AND TO ENFORCE TERMINATION OF SALES AGREEMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor, Wills Motors, Inc., was franchised under a written sales agreement by Volvo North America Corporation ("Volvo") to sell and service Volvo automobiles. Volvo has moved pursuant to 11 U.S.C. § 362(d)(1) for relief from the automatic stay in order to permit it to enforce the termination of a sales agreement with the debtor and to implement the termination provisions of the sales agreement. The debtor resists Volvo's motion on the ground that the Volvo franchise is still in effect and that it has been authorized by this court pursuant to 11 U.S.C. §§ 363 and 365 to sell its assets and to assume and assign its Volvo franchise to Leon Geller, a well-established and highly successful automobile dealer, who will assume and perform all of the conditions required under the Volvo franchise.

The debtor maintains that Volvo is adequately protected because there are no monetary defaults under the Volvo franchise and because Leon Geller is financially and professionally competent to satisfy the Volvo franchise conditions. Leon Geller has negotiated an acceptable agreement with Barclays Bank of New York, N.A. ("Barclays"), a secured creditor holding a senior lien on all of the debtor's assets and accounts receivable. The debtor contends that if it can sell its assets and assign its Volvo franchise to Leon Geller, it will be in a position to make a distribution to unsecured creditors, whereas if the automatic stay is lifted and the Volvo franchise is not assigned, the debtor will convert to Chapter 7 to the detriment of its senior secured creditor, Barclays, and all of its other creditors as well.

Volvo contends that it has already terminated the Volvo franchise on April 12, 1991, before the debtor filed its Chapter 11 petition on May 9, 1991, and that the debtor has no property interest in the Volvo franchise within the meaning of 11 U.S.C. § 541. Volvo contends that an injunction issued by a state court before the termination date of April 2, 1991 did not prevent the Volvo franchise from terminating on that date because no further action was required for the termination to take effect.

## FINDINGS OF FACT

1. On May 9, 1991, the debtor filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code and continues to operate and manage its business and property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The latest franchise agreement between the debtor and Volvo, called a "Sales Agreement," executed on July 13, 1981, requires Volvo dealers to comply with prop-

er warranty submissions procedures in connection with promoting the sale and servicing of Volvo automobiles. Volvo is authorized to conduct warranty compliance audits to assure that dealers comply with Volvo's warranty procedures.

3. Volvo conducted a review of the debtor's sales activities in 1987 and concluded that the debtor had submitted improper warranty claims, for which Volvo demanded reimbursement. Thereafter, Volvo notified the debtor in writing on October 18, 1990 that it was in material breach of the Sales Agreement and that in accordance with Paragraph IV, Clause 25(c)(1), the debtor was given 60 days to cure all breaches. The breaches alleged were improper warranty claims, failure to promote sales of Volvo automobiles, inability to service vehicles properly, questionable business practices and the debtor's precarious financial condition.

4. By letter dated November 2, 1990, Volvo advised the debtor that if the alleged material breaches by the debtor were not cured by December 24, 1990, the debtor's Sales Agreement with Volvo "will be terminated in accordance with its provisions and New York law."

5. On December 26, 1990, Volvo wrote to the debtor that defaults under the Volvo Sales Agreement had not been corrected and that "we inform you that pursuant to Paragraph IV, Clause 25(c)(1)(a) of the Sales Agreement, your Sales Agreement with Volvo *shall terminate on April 2, 1991, in accordance with New York law.*" (emphasis added).

6. On March 27, 1991, before the April 2, 1991 termination date, the debtor commenced an action against Volvo in the New York State Supreme Court, Westchester County, and obtained an Order to Show Cause with Preliminary Restraints, enjoining the termination of the Volvo Sales Agreement and franchise. In the state court action, the debtor sought an injunction and damages against Volvo, claiming that Volvo violated the New York Franchised Motor Vehicle Dealer Act §§ 461 to 471 (McKinney 1986) and the Federal Auto-

mobile Dealers Day in Court Act, 15 U.S.C. §§ 1221 to 1225 (1982).

7. On April 4, 1991, Volvo removed the debtor's state court action to the United States District Court for the Southern District of New York on the ground that federal jurisdiction existed because of the diversity of state citizenship between the parties.

8. On May 9, 1991, the debtor filed its Chapter 11 petition with this court and removed its action against Volvo, then pending in the district court, to the bankruptcy court. Thereafter, Volvo moved in the district court for a withdrawal of the reference or a remand of its lawsuit with the debtor to the district court.

9. Upon request from the district court, this court recommended that the reference be withdrawn because the debtor's action was not a core proceeding and because the debtor had demanded a jury trial, with the result that the bankruptcy court had no authority to try a noncore jury case. The district court adopted this court's recommendations and withdrew the reference on July 19, 1991 131 B.R. 263. Accordingly, the debtor's action against Volvo remains pending in the district court. The district court refused to issue a preliminary injunction against Volvo, as did the state court, restraining Volvo from terminating the Volvo franchise because the district court concluded that the debtor already had injunctive protection pursuant to the automatic stay imposed under 11 U.S.C. § 362(a). Accordingly, Volvo was required to apply to this court for relief from the stay before it could take any further action with respect to the debtor's Volvo franchise.

10. Volvo contends that neither the state court injunction issued on March 27, 1990 nor the automatic stay which was invoked with the filing of the debtor's Chapter 11 petition on May 9, 1991, tolled the December 29, 1990 written notice from Volvo to the debtor stating that the Sales Agreement with Volvo "shall terminate on April 2, 1991 in accordance with New York law." Hence, Volvo reasons that the Volvo franchise terminated on April 2, 1991, be-

fore the debtor filed its Chapter 11 petition and that relief from the stay is requested merely to implement the accomplished termination. Additionally, Volvo contends that the debtor could not assume and assign the Volvo franchise to Leon Geller or to any other acceptable automobile dealer.

11. Before Volvo's termination notice could result in a termination of the debtor's Volvo franchise on April 2, 1991, three separate factors intervened. First, the debtor commenced a state court action for damages and an injunction which was subsequently removed to the United States District Court for the Southern District of New York. A favorable ruling for the debtor could mean that Volvo had no basis for attempting to terminate the franchise, with the result that the notice of termination was ineffective and that the franchise continues as an asset of the debtor. Second, the state court injunction specifically restrained Volvo from terminating the franchise. Third, the automatic stay, which came into effect when the debtor filed its Chapter 11 petition on May 9, 1991, augmented the state court preliminary injunction and had the effect of restraining Volvo from terminating the debtor's Volvo franchise or taking property interests from the debtor.

12. At a hearing held on October 18, 1991, this court granted the debtor's motion pursuant to 11 U.S.C. §§ 363 and 365 for an order authorizing the debtor to sell its assets to Leon Geller, a successful and financially responsible automobile dealer and to assume and to assign the Volvo franchise to Leon Geller, or any other higher, better and acceptable offeror. The senior secured creditor, Barclays, has negotiated a deal with Leon Geller in the event that the Volvo franchise is assigned to him.

■ 13. Volvo neither rejects nor accepts Leon Geller as an assignee of the debtor's Volvo franchise because Volvo contends that the debtor's Volvo franchise was terminated on April 2, 1991, so that the debtor has no Sales Agreement or Volvo franchise to assume and assign to Leon Geller or any other party. Additionally, Volvo asserts that it only recently received the package of information which Leon Geller submitted to it and it has had insufficient time to review Leon Geller's credentials. Volvo's acceptance of Leon Geller as an assignee of the debtor's Sales Agreement and Volvo franchise is not necessary because 11 U.S.C. § 365(f) specifically permits a bankruptcy court to approve the debtor's assumption and assignment of an executory contract even if the other party to the contract objects to the assignment.

■ 14. To the extent that the debtor continues to enjoy contractual rights under the Volvo Sales Agreement and franchise, its assumption and assignment of the Sales Agreement and franchise to Leon Geller adequately protects Volvo's interests in the performance of the Sales Agreement and franchise because Leon Geller has been shown to be a successful, competent and financially responsible automobile dealer who offers adequate assurance of performance under the assigned Volvo Sales Agreement and franchise.

## DISCUSSION

The critical issue underlying Volvo's motion for stay relief is whether or not the debtor has a Volvo franchise contract to assume and assign to a responsible party, or whether the franchise terminated on April 2, 1991 pursuant to Volvo's earlier termination notice. If the debtor's Volvo franchise was terminated on April 2, 1991, Volvo's motion for lifting the automatic stay for cause, as authorized under 11 U.S.C. § 362(d)(1), should be granted because the debtor lacks any property interest in a previously terminated contract. *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir. 1981); *In re Seven Stars Restaurant, Inc.*, 122 B.R. 213 (Bankr.S.D.N.Y.1990); *In re Tudor Motor Lodge Associates, Limited Partnership*, 102 B.R. 936 (Bankr. D.N.J.1989). If, however, the debtor continued to have rights under the Volvo Sales Agreement and franchise when it filed its Chapter 11 petition on May 9, 1991, then the automatic stay should not be modified

or terminated because the debtor's assumption and assignment of the Volvo Sales Agreement and franchise to Leon Geller adequately protects Volvo's interests in the performance of the Sales Agreement and the Volvo franchise.

■ Volvo bottoms its position on the termination notice which it issued to the debtor stating that the debtor's Sales Agreement "shall terminate on April 2, 1991, in accordance with New York law." However, in the interval, on March 27, 1991, the New York State Supreme Court issued a preliminary injunction restraining Volvo from terminating the debtor's Sales Agreement. The state court injunction was in effect on April 4, 1991, when Volvo removed the debtor's state court action to the United States District Court for the Southern District of New York. Even after the removal to the district court, the state court injunction continued in effect and was binding on the parties until the debtor commenced its Chapter 11 case on May 9, 1991, at which time the automatic stay was invoked pursuant to 11 U.S.C. § 362(a). This point is governed by 28 U.S.C. § 1450,[1] which states in relevant part as follows:

> All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.

28 U.S.C. § 1450. *See Poriss v. Aaacon Auto Transport, Inc.*, 685 F.2d 56, 58 (2d Cir.1982) (temporary restraining order obtained by franchisee in state court action to prevent termination of franchise remained "in full force and effect" after franchisor removed state court action to federal district court); *Superior Motors Inc. v. Winnebago Industries, Inc.*, 359 F.Supp. 773, 782 (D.S.C.1973) ("[W]hatever effect the state injunction may have had was not affected by removal to [federal] court; the state order remains in full force and effect

until dissolved or modified by [the federal] court."). It is apparent from the facts that when the debtor filed its Chapter 11 petition on May 9, 1991, Volvo's purported termination of the Sales Agreement and Volvo franchise was not final and complete. Even though no further act on the part of Volvo was required to terminate the franchise on April 2, 1991, a state court injunction intervened to prevent such termination. This is not a case where an automatic stay will not toll the running of time under a contract and will not prevent the effectiveness of a previously issued termination notice. *See Moody*, 734 F.2d at 1212–16; *Tudor Motor Lodge*, 102 B.R. at 948–49; *In re Beverages Intern., Ltd.*, 61 B.R. 966 (Bankr.D.Mass.1986) (automatic stay does not toll the running of a specified time period).

■ In the instant case, Volvo attempted to terminate the debtor's Volvo franchise on April 2, 1991 in accordance with New York law. However, New York law intervened in the form of an affirmative injunction issued by the New York State Supreme Court restraining Volvo from terminating the franchise. Manifestly, the affirmative injunction issued by the New York State Supreme Court prevented the mere passage of time from resulting in the termination of the debtor's Volvo franchise. Although Volvo was not required to take any further affirmative action to terminate the franchise to achieve this result, Volvo was then subject to a negative restraint to allow the debtor to continue to act as a Volvo franchisee and to permit the debtor's Volvo franchise to continue until further order of the state court, which could, if the facts so warranted, sustain the debtor's complaint and permanently enjoin Volvo from terminating the franchise. Accordingly, when the debtor filed its Chapter 11 petition on May 9, 1991, it continued to operate as a franchisee of Volvo and retained a viable interest in a Sales Agree-

---

1. Bankruptcy Rule 9027(i) governs those cases which are removed to the bankruptcy court. Bankruptcy Rule 9027(i) is based on 28 U.S.C. § 1450. Bankruptcy Rule 9027 Advisory Committee Note (1983); *The Protector Corp. v. Passport Chemical Corp.*, No. 85 C 1146, 1985 WL 2168 (N.D.Ill. July 23, 1985). Here, however, Bankruptcy Rule 9027(i) is inapplicable because Volvo removed the state court litigation to federal district court prior to the filing of the bankruptcy petition.

302

ment which qualified as an executory contract that could be assumed and assigned within the scope of 11 U.S.C. § 365.

There were no monetary defaults under the debtor's Sales Agreement with Volvo. The reason given by Volvo for termination was the debtor's alleged breach of certain conditions and standards required under the sales Agreement, for which adequate assurance of cure and prompt performance was offered by the assignee, Leon Geller. The extent of the debtor's interest in the Volvo franchisee is even stronger than the debtor's interest in a foreclosed home mortgage in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). In the *Taddeo* case, the United States Court of Appeals for the Second Circuit held that a debtor's right of redemption after foreclosure and before sale was a sufficient property interest within the meaning of 11 U.S.C. § 541 as to allow the debtor to cure the mortgage default and reinstate the foreclosed mortgage in accordance with 11 U.S.C. § 1322(b)(5). The debtor's interest in the mortgage in the *Taddeo* case was terminated by the judicial foreclosure judgment. The debtor's only remaining property interest was a residual interest in the equity of redemption. In the instant case, the state court injunction affirmatively restrained Volvo from terminating the Volvo franchise and authorized the debtor to continue to remain as a Volvo franchisee. The debtor had more than an equity of redemption. The debtor continued as a Volvo franchisee in accordance with New York law, as directed by the New York State Supreme Court, Westchester County.

In a Chapter 11 case, a debtor may unimpair a claim pursuant to 11 U.S.C. § 1124(2) by curing the default and reinstating the maturity of the claim as it existed before the default. The same treatment must be applied if a debtor wishes to assume and assign an executory contract pursuant to 11 U.S.C. § 365(f)(2). The debtor must assume the contract, which means that the debtor must cure or provide adequate assurance that it will promptly cure any defaults and provide adequate assurance of future performance,

as required by 11 U.S.C. § 365(b)(1). Additionally, the debtor must offer adequate assurance of future performance by the assignee, as expressed in 11 U.S.C. § 365(f)(2)(B). The debtor has already satisfied the requirements of 11 U.S.C. §§ 363 and 365 and its motion to sell its assets to Leon Geller and to assume and assign its Volvo Sales Agreement and franchise to Leon Geller was granted from the bench.

Volvo cites this court's holding in *Seven Stars*, 122 B.R. at 218, for the proposition that the franchise terminated before the debtor filed its Chapter 11 petition and that the automatic stay should be lifted because the debtor apparently has no interest in the Volvo franchise either to assume or assign. However, this court observed in the *Seven Stars* case that had the tenant debtor in the case obtained a so-called "Yellowstone" injunction under New York law temporarily restraining the landlord from terminating the lease, *see First Nat'l Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968), the intervention of such temporary injunction under New York law would have had the effect of preserving the debtor tenant's interest in the lease, which property interest would then have existed after the debtor filed its Chapter 11 petition. 122 B.R. at 217.

In the instant case, the debtor affirmatively obtained a temporary restraining order from the New York State Supreme Court which had the same effect as a so-called "Yellowstone" injunction in a landlord-tenant case. The state court's temporary injunction prevented the debtor's loss of the Volvo franchise as a result of the mere passage of time and preserved it beyond the April 2, 1991 termination date and into the bankruptcy case. After the debtor filed its Chapter 11 petition, it was entitled to employ 11 U.S.C. § 365 to assume and assign the existing franchise to Geller, who presented evidence of adequate assurance of cure and performance under the Volvo Sales Agreement and franchise. Such adequate assurance of performance constitutes sufficient adequate protection to Volvo to warrant a denial of Volvo's motion

for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. The Order to Show Cause with Preliminary Restraints which the debtor obtained from the New York State Supreme Court, Westchester County, on March 27, 1991, enjoining Volvo from terminating the Volvo Sales Agreement and franchise had the effect of preserving the debtor's interest in the Volvo Sales Agreement and franchise into the debtor's Chapter 11 case.

3. The debtor had an existing contractual right under the Volvo Sales Agreement and franchise when it filed its Chapter 11 petition on May 9, 1991, with the result that the debtor could employ 11 U.S.C. § 365 to assume and assign such contractual interest in the Volvo Sales Agreement and franchise to a third party who offered adequate assurance of performance under the assigned contract and franchise.

4. Volvo's motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) is denied because Volvo is adequately protected as a result of the assignee's adequate assurance of performance.

SETTLE ORDER on notice.